Melody PERKINS, Appellant,

v.

GENERAL MOTORS CORPORATION,
Appellee.

In re Melody PERKINS, Gwen
G. Caranchini, Petitioners.

Nos. 91–2825, 91–3550.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1992.

Decided May 22, 1992.

Gwen T. Caranchini, Kansas City, Mo. (argued), for Melody Perkins.

Robert K. Ball, Kansas City, Mo. (argued), for Gwen T. Caranchini in case 91–3550.

Alleen S. Castellani, Kansas City, Mo. (argued), for appellee.

Before WOLLMAN, MAGILL, and BEAM,* Circuit Judges.

MAGILL, Circuit Judge.

Plaintiff below Melody Perkins and her attorney Gwen G. Caranchini appeal an order of the district court[1] refusing to vacate sanctions. Appellants also seek mandamus relief ordering the district court to lift the sanctions. Appellants argue the sanctions must be lifted because the underlying action on which the sanctions were based has been settled by the parties. The request for mandamus relief is denied and the district court's order imposing the sanctions is affirmed.

**I.**

Melody Perkins sued General Motors Corporation in 1986 for sexual harassment. The substantive claims, which are no longer at issue, alleged the company subjected Perkins to sexual harassment in the workplace in violation of Title VII. Perkins also attached a diversity state claim that GM negligently retained an employee that sexually harassed Perkins. The district court granted summary judgment on the state claim and proceeded to trial on the Title VII claim. After a six-week bench trial, Perkins lost her Title VII claim.

After the trial concluded, GM moved the court for sanctions against Perkins and attorney Caranchini. The district court granted the motion in part and levied sanctions against Perkins and Caranchini for various abuses during trial and discovery.[2]

In an earlier appeal of Perkins' substantive claims, this court upheld the district court's Title VII verdict, but reversed the district court's summary judgment denial of the negligence claim and remanded for trial on that issue. *Perkins v. Spivey,* 911 F.2d 22 (8th Cir.1990). Meantime, the district court set a hearing for June 27, 1991, to conclude arguments on the attorney's fees requested by GM under the sanction order. One day before this hearing, the parties settled the underlying case. As part of the settlement agreement, GM joined Perkins and Caranchini in moving the court to lift the sanction order. On July 5, 1991, the court refused to lift the order.

**A. Writ of Mandamus**

 Appellants seek a writ of mandamus ordering the district court to lift the sanctions. The writ of mandamus is an extraordinary remedy that should be uti-

---

* Chief Judge Arnold presided when this case was heard and later recused himself. Judge Beam substituted for Chief Judge Arnold and the case was resubmitted March 11, 1992, on the record and tape of oral argument.

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

2. The district court sanctioned Caranchini under Fed.R.Civ.P. 11 and 26(g), and under 28 U.S.C. § 1927 (1988). Perkins was sanctioned under Rule 26(g).

lized only in those "exceptional circumstances ... amounting to a judicial usurpation of power." *In re Lane*, 801 F.2d 1040, 1042 (8th Cir.1986) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam)). A federal court may issue a writ of mandamus only when the appellant has established a "clear and indisputable right" to the relief sought, the court has a nondiscretionary duty to honor that right, and appellant has no other adequate remedy. *Lane*, 801 F.2d at 1042.

Appellants have met none of these criteria. As we make clear *infra*, the district court had no duty to lift the sanction order under *Willy v. Coastal Corp.*, — U.S. —, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992), and *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The district court's decision, therefore, was discretionary. Finally, since we have concluded *infra* that the district court's sanction order is appealable, appellants have an adequate remedy. The motion for a writ of mandamus, therefore, is denied.

### B. Jurisdiction

■ Appellants contend that the district court lost jurisdiction to enforce the sanctions when the parties settled the case. Since the court retained no jurisdiction over the underlying case, appellants argue, the district court was required to dismiss the sanctions as part of the whole case.

In *Willy*, 112 S.Ct. 1076, the Supreme Court held that a district court is empowered to award Rule 11 sanctions even though it was later found to have lacked subject-matter jurisdiction over the underlying claim.

> A final determination of lack of subject-matter jurisdiction of a case in a federal court, of course, precludes further adjudication of it. But such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated un-

der the misapprehension that it had jurisdiction.

*Id.* at 1080. Maintaining jurisdiction over the sanctions is even more appropriate in this case. It is undisputed that the district court had subject-matter jurisdiction over the case when the sanctions were ordered. Jurisdiction over the underlying claim was lost later. The district court order appellants want set aside is collateral to the merits. *Id.* A federal court may consider collateral issues after an issue is no longer pending. *Id.*

Moreover, appellants' argument misinterprets the role of sanctions. The purpose of sanctions goes beyond reimbursing parties for expenses incurred in responding to unjustified or vexatious claims. Rather, sanctions are "designed to punish a party who has already violated the court's rules." *Willy*, 112 S.Ct. at 1081. The interest in having rules of procedure obeyed does not disappear merely because an adversary chooses not to collect the sanctions.

Respondent[3] argues that since the district court never determined the monetary value of the sanctions, there has been no final appealable order from the district court. We disagree. The case below has been settled by the parties and is concluded in its entirety. After briefing and a hearing, the district court on February 26, 1990, issued its order sanctioning Perkins and Caranchini. This order, however, was not a final appealable order because it prescribed procedures to determine the amount of money due under the sanctions. As part of the settlement agreement reached the day prior to the sanction hearing, GM withdrew its motion for sanctions and joined appellants in a motion to drop the sanction order. The court refused and upheld the sanctions in an order issued on July 5, 1991.

■ We find that the July 5, 1991, order made final the February 26, 1990, sanction order. While the district court did not assess a monetary penalty, GM informed the district court that it had agreed as part of the settlement not to collect any monetary

---

**3.** GM has elected not to participate in this appeal and was dismissed from the action by order of this court. Respondent refers to Judge Bartlett.

sanctions. Therefore, it was reasonable for the district court to issue the sanction order without monetary penalty. The failure of the district court to go through the motions of assessing a dollar amount to penalties GM had agreed not to pursue does not prevent the sanction order from becoming final. The finality requirement should be given a "practical rather than a technical construction." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981).

Moreover, we find compelling policy reasons for exercising jurisdiction over this appeal. If an attorney is unable to appeal a sanction order after the underlying case has been settled, the attorney is left with no avenue of challenging the sanction order. The law encourages parties to settle disputes. An attorney must be free to settle cases when settlement is in the client's best interest. The refusal to grant jurisdiction over an appeal of sanctions after the underlying suit has been settled thrusts a personal conflict upon the attorney—by settling a case in the client's interest he may have to forfeit a personal right to appeal the sanctions levied against him. *See Cheng v. GAF Corp.,* 713 F.2d 886, 889–90 (2d Cir.1983).

■■■ Appellants also argue that since GM has agreed not to collect monetary sanctions, there is no longer an adversarial relationship and the sanction order is moot. We disagree. Although GM moved the court for sanctions, it was the district court that imposed them. Appellants are entitled to bargain with adversaries to drop a mo-

tion for sanctions, but they cannot unilaterally bargain away the court's discretion in imposing sanctions and the public's interest in ensuring compliance with the rules of procedure. *See Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1200 (11th Cir.1985). *Contra Riverhead Sav. Bank v. National Mortgage Equity Corp.,* 893 F.2d 1109, 1113 (9th Cir.1990).

### C. Sanction Order [4]

■■■ After full briefing and oral argument by the parties, the district court assessed various sanctions against Perkins and attorney Caranchini. The district court found that the tactics of plaintiff's attorney "exceeded the most generous definition of zealous advocacy or of hard fought, energetic and honest representation. Rather than devoting her efforts to the just, speedy, and inexpensive determination of this case, plaintiff's counsel engaged in abusive litigation tactics that delayed the processing of the case and increased the expense for both parties and the judicial system." *Perkins v. General Motors Corp.,* 129 F.R.D. 655, 660 (W.D.Mo.1990) (quotations omitted). The district court awarded sanctions based on five separate violations.

First, the district court sanctioned Perkins and Caranchini under Rule 26(g) [5] and Caranchini under 28 U.S.C. § 1927 (1988) [6] for persistently pursuing unsupported factual allegations against GM employee Art Hester during discovery. The unsupported allegations included charges that Hester

---

**4.** Appellants contend the sanctions are not before this court because this court on August 23, 1991, temporarily stayed briefing on the appeal pending resolution of the mandamus petition. This court, however, on November 14, 1991, entered an order setting a briefing schedule and oral argument in both case Nos. 91–2825 (the appeal) and 91–3550 (the mandamus petition).

**5.** The court shall impose a sanction upon the party and/or her attorney when a false discovery document is signed. Before signing a pleading, an attorney must ensure that:

[T]o the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with these rules and warranted by existing law or a good faith

argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

Fed.R.Civ.P. 26(g).

**6.** "Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (1988).

had been "drummed" out of the United States Army on charges of sexual harassment. Plaintiff also stated under oath in an interrogatory answer that she had personal knowledge that Hester had engaged in sexual harassment and other sexual misconduct at the plant. *Id.* at 660–61. The court concluded that plaintiff and her attorney produced no factual basis to support the personal attacks on Hester, failed to undertake an objectively reasonable inquiry into the charges made in interrogatory answers, and that the allegations were "intended to harass Hester and to increase the cost of litigation for the defendant." *Id.* at 662.

Second, the district court sanctioned Caranchini under Rule 11[7] and § 1927 for falsely stating in a November 1987 motion to amend her complaint that she did not discover until recently that GM employee Thomas Spivey lived out of state and could be joined in the suit without destroying diversity of citizenship. The court found that Caranchini knew at least as early as October 1986 that Spivey lived in Georgia.[8] Further, the court found that Caranchini failed to produce any evidence supporting her explanation that Spivey maintained a second residence in Missouri or Kansas. Caranchini later admitted that she sought the late amendment because of a change in strategy. The court concluded that Caranchini should be sanctioned for filing false pleadings as to the reason for the delay in filing her motion to join Spivey. *Id.* at 663–64.

Third, the court sanctioned Perkins and Caranchini under Rule 26(g) and Caranchini under § 1927 for failing to disclose in discovery that former GM employee Fred White, Sr., would be asked to testify about his supposed belief that Perkins' claims were true. Despite repeated discovery requests by GM for plaintiff to identify all GM employees with purported knowledge of the alleged incidents, plaintiffs refused to disclose White's name until they called him at trial and questioned him about his belief in Perkins' claim. The court concluded that Perkins and Caranchini intentionally failed to disclose White's name in order to surprise GM at trial. *Id.* at 666.

Fourth, the court sanctioned Caranchini under § 1927 for misrepresenting to the court the testimony of several witnesses. Caranchini called numerous witnesses to testify as to the work environment at the GM plant. Specifically, the witnesses testified as to their perceptions of sexual harassment at the plant and as to incidents of sexual harassment directed at them. The court allowed the witnesses to testify on the condition that: (1) the work environment about which they testified was the same as that experienced by Perkins, and (2) Perkins knew of the other witnesses' experiences at the plant. Caranchini assured the judge that all the witnesses would be "tied in to plaintiff." Perkins admitted in discovery, however, that she did not become aware of four of the witnesses' allegations until after the suit was filed. Therefore, the witnesses' allegations could not have affected Perkins' perception of the plant environment when she worked there and Caranchini could not possibly have tied them to Perkins. The court concluded that if he had known that Perkins was unaware of these witnesses' allegations while she was at the plant, he would not have allowed the testimony. Therefore, he sanctioned Caranchini for unreasonably multiplying the proceedings. *Id.* at 669.

Finally, the court sanctioned Caranchini under Rule 11 and § 1927 for filing a motion to recuse the judge three months after the judge decided the case and released his

---

**7.** Rule 11 provides:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation. Fed.R.Civ.P. 11.

**8.** In a September 1987 scheduling conference, both parties stated that no motions to join parties or amend pleadings would be forthcoming.

oral ruling to the parties, but before written findings were issued. The recusal motion primarily was based on two grounds: (1) rumors that the defense firm in the case would merge with a law firm at which the judge's wife was a partner, and (2) that one of the judge's law clerks had accepted a position with a law firm that did some work for GM. The court found that the motion smacked of bad faith for several reasons.

First, the court found the motion untimely. Caranchini argued in the motion that the judge's wife would benefit from a ruling for GM because she defended termination suits as part of her practice. The silliness of this argument goes without comment, but in any event, as the judge noted, parties were aware well before the case was filed that the judge's wife held this position. As to the charge of potential financial conflict as a result of the rumored law firm merger, the judge concluded the motion was filed in bad faith because it came three months after Caranchini became aware of the rumor. Caranchini's recusal motion also focused on the law clerk's acceptance of employment with a firm that represented GM. Immediately after accepting the job offer, the clerk informed the judge. Within thirty minutes after the clerk accepted employment with the firm, the judge called all the parties into his chambers and notified them of the situation. The judge completely explained the potential conflict and offered to sever the clerk from all ties with the case. None of the parties, including Caranchini, said they had any concerns about the development.

Second, the judge concluded that the recusal motion was made in bad faith because it "lacked any merit whatsoever" and "[n]ot surprisingly ... contained no legal authority even *suggesting* that recusal was appropriate in this situation." *Id.* at 671-72 (emphasis in original). Finally, the judge determined the motion was filed in bad faith to delay the issuance of the written findings from the original trial, which Caranchini knew would be released in early April. Beginning on April 17, Perkins was set to go to trial in the case against Spivey. "Caranchini knew that if my findings were

issued before the Spivey trial began, the chance that my decision in this case would have some preclusive effect on that case would be increased." *Id.* at 672.

We review the district court's award of sanctions under an abuse of discretion standard. *Cooter & Gell*, 110 S.Ct. at 2461. After reviewing the record, we find the sanctions were well grounded in fact and law and did not constitute an abuse of discretion.

## II.

For the foregoing reasons, the judgment of the district court is affirmed. The motion for mandamus relief is denied.