In the Matter of David Francis KNEP-PER, Sally Louise Knepper, C. David Peebles, and Linda M. Wagoner, Appellants,

v.

Daniel J. SKEKLOFF, Jack E. Roebel, and J.T. Stelzer, Appellees.

No. F 92–226.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 8, 1993.

C. David Peebles, Linda M. Wagoner, Wagoner Ellis Kiefer, Fort Wayne, IN, for David Francis Knepper, and Sally Louise Knepper, debtor/appellant.

Jack E. Roebel, Fort Wayne, IN, for Unsecured Creditors Committee, appellee.

Daniel J. Skekloff, Hoffman Thompson Skekloff Rogers and McNagny, Fort Wayne, IN, for Thompson Asphalt Products, appellee.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on appeal from the August 6, 1992 Order imposing sanctions, entered by the United States Bankruptcy Court for the Northern District of Indiana, the Honorable Robert E. Grant, Judge. Appellant debtor David Knepper[1] and his attorneys, appellants C. David Peebles and Linda M. Wagoner, appeal from the bankruptcy court's imposition of sanctions against them in the form of an award of costs and fees.

On October 6, 1992, the appellants filed this appeal. The appellants filed their Appellants' Brief on October 21, 1992. Appellee Daniel J. Skekloff filed his Appellee's Brief on November 5, 1992, while appellee Jack E. Roebel filed his Appellee's Brief on November 5, 1992. In response, the appellants filed a Reply Brief on November 18, 1992. The court heard oral argument in this matter on December 16, 1993, at which time it took the matter under advisement. For the following reasons, the decision and order of the bankruptcy court is AFFIRMED.

---

1. The bankruptcy action was filed jointly by David Knepper and his wife, Sally Knepper. However, the Order of the bankruptcy court which is at issue in this appeal did not impose sanctions against Sally Knepper. Apparently, Sally Knepper was not actively involved in pursuing the bankruptcy. Therefore, the court's references to the bankrupt will concern David Knepper, and not his wife.

## Factual Background

Knepper filed a Chapter 11 bankruptcy action on April 16, 1992, and was appointed debtor-in-possession. Knepper's attorneys for this bankruptcy were Peebles, lead counsel, and Wagoner. Attorney Roebel was retained as counsel for the creditors' committee in June of 1992. On June 26, 1992, the creditors' committee filed an emergency motion for appointment of a trustee. On July 2, 1992, the bankruptcy court set the motion for appointment of a trustee on its calendar for a one-half day hearing, to be held on the afternoon of July 30. At that time, the bankruptcy court also ordered the parties to submit pretrial statements, as well as exhibit and witness lists, at least ten days prior to the hearing. Knepper failed to file a pre-trial statement or a list of witnesses and exhibits until the day of the July 30 hearing, ten days late.

The First National Bank of Northwest Ohio ("the Bank"), through its attorney, J.T. Stelzer, had requested relief from the automatic stay in bankruptcy, and a hearing on that request had been set for the morning of July 30, 1992. Knepper failed to appear that 10:00 a.m. hearing on the motion for relief from the automatic stay. After taking note of stipulated facts, and hearing some argument on that motion, Judge Grant recessed the Bank's hearing until 1:00 p.m. that day, at which time the creditors' emergency motion for appointment of a trustee was to be heard.

The bankruptcy court conducted the 1:00 p.m. hearing on the motion for appointment of a trustee.[2] During this hearing, at a point when Knepper had been testifying for over one hour, and when he was becom-ing increasingly uncomfortable with attorney Roebel's examination about Knepper's possible inequitable conduct during the bankruptcy, Knepper made a pre-arranged, secret signal to his attorneys, Peebles and Wagoner. This signal meant that Knepper's counsel should immediately file a Motion to Convert to Chapter 7. Immediately upon this signal, Peebles stood up, interrupted the testimony, and presented the bankruptcy court with a previously prepared and signed Motion to Convert.[3] At this, Judge Grant, along with several of the attorneys representing the various involved interests became annoyed, and after granting the motion to convert and appointing a trustee, the bankruptcy court advised all present that he was considering imposing sanctions.

The bankruptcy court held a hearing on sanctions on August 3, 1992, and issued an order imposing sanctions on August 6, 1992.[4] In imposing sanctions, the bankruptcy court made Knepper, Wagoner and Peebles jointly and severally liable for: $145 for expenses of the Clerk of Court; $910.38 for Stelzer's attorney's fees; $624 for Skekloff's attorney's fees; and $1,250 for Roebel's attorney's fees. The bankruptcy court made the assessment joint and several because, "All three individuals were willing and actively a party to the charade played out last Thursday." The Order levied fees which incurred only after July 27, 1992.

The bankruptcy court found that Skekloff's fees should be paid by the appellants because Skekloff was present at that hearing on behalf of a creditor, "in order to take an active role with regard to the examination of Mr. Knepper." The bankruptcy court found that Roebel's fees should be paid by the appellants because Roebel was

2. Numerous people were present at the 1:00 p.m. hearing, appearing as witnesses or as persons concerned with protecting their or their client's interests. The transcript of hearing indicates that at least 12 attorneys were present on behalf of clients involved in the proceedings, and the bankruptcy court's docket sheet indicates that the creditor's committee had subpoenaed over 35 witnesses for this hearing. Attorney Skekloff appeared at the hearing on behalf of creditor Thompson Asphalt Products. Attorney Stelzer was present at this hearing to take up the matter of the First National Bank of Northwest Ohio's request for relief from the automatic stay, which had been continued from an earlier hearing held that same morning. Attorney Charles Weinraub was present as chairman of the creditor's committee, and attorneys David Smelko and Brian Nehrig appeared on behalf of creditor Summit Bank.

3. The Motion to Convert mooted the questioning by Roebel, as a trustee was appointed in the Chapter 7 case as a matter of course.

4. In that August 6, 1992 Order, the bankruptcy court incorporated its comments made during the August 3, 1992 hearing, as the basis for its imposition of sanctions.

obviously involved in the vexatious July 30 hearing. That court also found that Stelzer's fees should be paid by the appellants because Stelzer's appearance at the 1:00 p.m. hearing was required by reason of the Bank's motion for relief from stay, which hearing was adjourned that morning due to Knepper's failure to appear, and was continued until the 1:00 p.m. hearing on the motion for appointment of a trustee. The bankruptcy court denied motions for assessment of fees by Weinraub and Smelko because, although they attended the "secret signal" hearing, they had no official roles as counsel for active hearing participants. The $145 award for the Clerk of Court was for the time the court reporter spent recording the hearing. On August 24, 1992, the bankruptcy court denied the appellants' motion to alter or amend the August 6, 1992 Order.

### Discussion

■ The bankruptcy court's legal conclusions are reviewed *de novo*, and findings of fact are reviewed pursuant to the "clearly erroneous" standard. *Samuels v. Wilder,* 906 F.2d 272, 275 (7th Cir.1990); *In re: Rivinius,* 977 F.2d 1171, 1175 (7th Cir. 1992).

One of the sources of authority upon which the bankruptcy court sanctioned the appellants is 28 U.S.C. § 1927. This statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Peebles and Wagoner argue the sanctions are improper because they were simply following their client's wishes, and that they had no alternative but to file the motion to convert upon Knepper's instructions. The attorneys admit that prior to the hearing they discussed the possibility converting the bankruptcy to Chapter 7 with Knepper, and that they prepared the motion to convert the day prior to the hearing, and had actually signed the motion to convert prior to the commencement of the hearing.

■ When an attorney pursues a course of conduct which a reasonably careful attorney would know to be unsound, or which is taken with reckless indifference for the law, § 1927 permits the court to impose on such an attorney the costs the adverse party incurs as a result of such behavior. *In re: TCI, Ltd.,* 769 F.2d 441, 445 (7th Cir.1985). In *Indianapolis Colts v. Mayor and City Council of Baltimore,* 775 F.2d 177, 182 (7th Cir.1985), the Seventh Circuit held that § 1927 sanctions may be assessed when attorneys "intentionally file or prosecute a claim that lacks a plausible legal or factual basis."

As Judge Easterbrook observed in commenting on § 1927 sanctions for bad faith bankruptcy court legal representation:

> The best way to control unjustified tactics in litigation is to ensure that those who create costs also bear them.... Lawyers who litigate carelessly now must take the consequences.... When an attorney recklessly creates needless costs the other side is entitled to relief. [T]he desire to keep business is an inevitable part of the practice of law. When lawyers yield to the temptation file baseless pleadings to appease clients, they must understand that their adversary's fees become a cost of *their* business.

*In re: TCI, Ltd.,* 769 F.2d at 446.

■ The bankruptcy court found that Knepper, Wagoner and Peebles were not candid and forthright with the court, had failed to comply with the pre-hearing orders of the court, and had unreasonably and vexatiously engaged in tactics to abuse the judicial process. The bankruptcy court further found that the appellants had violated the fiduciary duties of a debtor in possession by failing to terminate the Chapter 11 attempt at reorganization at the moment it became obvious that their efforts with Chapter 11 would not succeed; that it was clear to Knepper and counsel by, at least, July 27, 1992, that the Chapter

11 case could not succeed; and that Knepper and counsel knew "that conversion was the only viable alternative", yet "concealed that reality and consciously delayed acting upon it until it suited their purposes and utilized conversion as a trial tactic contrary to the principles associated with the orderly administration of justice."

The court finds these matters supported by the record, and not clearly erroneous. The conduct of Knepper and his attorneys was inappropriate. The failure to file the pretrial statement until the morning of the hearing justifies the imposition of sanctions, as such pretrial matters assist the court and the parties in the effective management of the case and the court's docket. Furthermore, given the information which was available to the appellants several days prior to the hearing, they knew that the appointment of a trustee was in order, and that the proper course was to file the motion to convert. With bad intent or reckless indifference, the appellants failed to file the motion to convert when it became the obvious manner in which to continue the bankruptcy proceedings. By compelling numerous witnesses, several attorneys, the court's staff, and the very busy bankruptcy judge to participate in a hearing which was obviously not necessary, the appellants unreasonably multiplied the proceedings.

Thus, the excuse of "merely following our client's wishes" is not a sufficient defense. To paraphrase Judge Easterbrook, in pursuing the hopeless Chapter 11 reorganization case, Peebles and Wagoner were yielding to the temptation of appeasing Knepper, and thereby, transformed the creditors' committee's legal costs into Peebles' and Wagoner's cost of client development. In *In re: TCI, Ltd.*, the court issued the following warning to the bar:

> The bar of this circuit must be aware that the courts will enforce § 1927 and Rule 11. Litigation must be grounded in an objectively reasonable view of the facts and the law. If it is not, the lawyer who proceeds recklessly—not his innocent adversaries—must foot the bill.

*In re: TCI, Ltd.*, 769 F.2d at 450. At their own risk, Peebles and Wagoner disregarded this admonition, and now, they must foot the bills submitted by their adversaries.

█ The appellants also argue that the bankruptcy court lacked jurisdiction to impose sanctions under § 1927, because the bankruptcy court is not a "court of the United States" within the meaning of § 1927. The issue of whether bankruptcy courts are courts of the United States, as intended in this statute, is a matter of much disagreement. *Regensteiner Printing Co. v. Graphic Color Corp.*, 142 B.R. 815, 818–819 (Bankr.N.D.Ill.1992) (holding that bankruptcy courts are not within the range of § 1927, but that bankruptcy courts have sanctioning authority under 11 U.S.C. § 105, *infra*, and under Bankruptcy Rule 9011, *infra*, which is the bankruptcy equivalent of Fed.R.Civ.P. Rule 11). As the Seventh Circuit has subsequently recognized, despite the fact that the *In re: TCI, Ltd.* panel upheld a bankruptcy court's imposition of § 1927 sanctions, that panel was not called upon to determine whether a bankruptcy court is a "court of the United States" within the meaning of the statute, and therefore, whether a bankruptcy court has the jurisdiction to impose § 1927 sanctions. *In re: Memorial Estates, Inc.*, 950 F.2d 1364, 1369 (7th Cir. 1991), *cert. denied sub nom. Cemco, Inc. v. Newman*, —— U.S. ——, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992) (affirming award of sanctions on basis of Bankruptcy Rule 9011, while still not addressing issue of jurisdiction under § 1927).

As the Seventh Circuit has upheld § 1927 sanctions in bankruptcy, and as that court has not since prohibited such sanctions, the court does not now find that the bankruptcy court was without jurisdiction to impose such sanctions in this case. Furthermore, the bankruptcy court's sanctions were proper under other authority, as well.

█ The bankruptcy court relied upon its "inherent authority as vindicated by the Supreme Court in *Chambers v. Nasco*" to adequately "do what the Court believes needs to be done." Certain implied powers

are necessary for the courts to function as an institution, and for this reason, courts are vested with power "to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. Nasco,* —— U.S. ——, ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). In *Chambers,* the Supreme Court recognized that federal courts have inherent power to assess attorney's fees against parties and their counsel. *Id.,* —— U.S. at ——, 111 S.Ct. at 2132. As the Supreme Court explained in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975), courts may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska,* 421 U.S., at 258–259, 95 S.Ct., at 1622–1623; *Chambers,* —— U.S. at ——, 111 S.Ct. at 2133. Such bad faith may be shown when a party needlessly delays or disrupts a proceeding. *Id.,* —— U.S. at ——, 111 S.Ct. at 2133.

■■■■ Additionally, sanction statutes such as § 1927 and rules such as Fed. R.Civ.P. Rule 11 (and Bankruptcy Rule 9011) have not displaced "the inherent power" to impose sanctions for abuse of the court's office. *Chambers,* —— U.S. at ——, 111 S.Ct. at 2134. However, inherent powers are to be exercised with restraint and discretion. *Id.,* —— U.S. at ——, 111 S.Ct. at 2133. The imposition of sanctions pursuant to the court's "inherent powers" is reviewed for abuse of discretion. *Id.,* —— U.S. at ——, 111 S.Ct. at 2138.

■■ As previously discussed, Knepper and his attorneys acted in bad faith, or with reckless regard for the function of the bankruptcy proceedings by requiring that court to hold the needless proceeding on the motion to appoint a trustee, thereby abusing the office of the bankruptcy court and delaying the resolution of the bankruptcy litigation. The sanctions against the appellants were imposed as a result of the lack of respect for the court's function as an arbitrator of justice, and as a result of the appellants' failure to timely submit to the lawful pretrial mandates of that court. The bankruptcy court did not abuse its inherent power to sanction the conduct exhibited by the appellants.[5]

■■ In addition to 28 U.S.C. § 1927 and the "inherent powers", bankruptcy courts have the power to impose sanctions under Bankruptcy Rule 9011. Similar to Fed. R.Civ.P. Rule 11, Bankruptcy Rule 9011(a) allows for sanctions when parties breach their certification that filings are made in "good faith" and not "for any improper purpose such as to harass or to cause unnecessary delay or needlessly increase the cost of litigation."

Knepper's pre-trial statement was signed on the day of the hearing, when Knepper and counsel knew or should have known that they had no viable opportunity to reorganize, and would be forced to file the motion to convert. In the light of fact that at p. 5 of their "Debtors' Pretrial Statement", the appellants represented, "Debtors therefore contend that no ground exists for the appointment of a trustee", when such ground reasonably should have been obvious the appellants, the sanctions against counsel were justified by Bankruptcy Rule 9011.

■■■ Furthermore, 11 U.S.C. § 105 permits bankruptcy courts to impose sanctions against both parties and counsel who willfully abuse the judicial process. *Regensteiner Printing,* 142 B.R. at 819. Section 105 provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination nec-

5. The appellants also argue that the bankruptcy court cannot sanction a client under § 1927. In its order, the bankruptcy court recognized that 28 U.S.C. § 1927 does not permit imposing sanctions against clients, however, that court invoked its inherent powers under *Chambers,* —— U.S. at ——, 111 S.Ct. at 2132, to support its sanction against Knepper. In *Chambers,* the Court upheld an order imposing sanctions entered against Russell Chambers, the party/client. Thus, courts clearly may sanction parties, as well as counsel.

essary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Pursuant to 11 U.S.C. § 105, sanctions were justified against Knepper, Wagoner and Peebles, as such sanctions were appropriate to enforce compliance with the bankruptcy court's orders that the parties file pretrial statements, and to prevent an abuse of the bankruptcy proceedings.

█ Lastly, the appellants take issue with bankruptcy court's finding that the appearance of attorneys Stelzer and Skekloff was necessary at that hearing. The appellants unpersuasively contend that these two attorneys should not receive fee awards because Stelzer and Skekloff were not active participants in the "secret signal" hearing, but, rather, were "just hanging around" at the hearing. In fact, insofar as this argument regards Stelzer, the appellants' position is incredible. At the 10:00 a.m. hearing on the Bank's motion for relief from the automatic stay, Stelzer unquestionably notified the bankruptcy court of his desire to cross-examine the Kneppers when, and if, they appeared at the 1:00 p.m. hearing. The bankruptcy court explicitly continued the 10:00 a.m. hearing on the Bank's motion for relief from stay until that afternoon, pronouncing, "By agreement of the parties, this hearing is recessed to 1:00 o'clock p.m." The record of that 10:00 a.m. hearing clearly reveals that since the Kneppers failed to appear at the morning hearing, Stelzer related to that court that he "would like to reserve the opportunity to cross-examine Mr. and Mrs. Knepper" when, and if, they appeared later in the day.[6] The bankruptcy court committed no clear error in imposing sanctions related to Stelzer's participation at the 1:00 p.m. hearing.

Likewise, the attack on the award as to Skekloff is unavailing. Skekloff testified that his appearance at the 1:00 p.m. "secret signal" hearing was in contemplation of taking an active role in the prosecution of the motion for an appointment of trustee. Skekloff was at that hearing as counsel of record on behalf of unsecured creditor Thompson Asphalt Products, Inc. Thompson Asphalt's employee Beverly Gearhart had been subpoenaed to testify at that 1:00 p.m. hearing, and was involved in monitoring Knepper's questionable conduct during the course of his Chapter 11 reorganization attempt. The record sufficiently supports the bankruptcy court's conclusions that Skekloff represented a creditor which was actively involved in monitoring Knepper's activities, and that in that capacity, Skekloff was actively involved in seeking the appointment of a trustee. The bankruptcy court's award of sanctions in favor of Skekloff is not clearly erroneous.

## CONCLUSION

An appellate court may affirm judgment on any basis in the record. *In re: Memorial Estates*, 950 F.2d at 1370. Therefore, the court relies upon § 1927, the bankruptcy court's inherent sanctioning powers, 11 U.S.C. § 105, and Bankruptcy Rule 9011, in ruling that the bankruptcy court's Order of August 6, 1992, is AFFIRMED.

---

**6.** Moreover, the fact that counsel for Knepper even tenders this absurd argument that Stelzer "voluntarily decided to hang around" for the 1:00 p.m. hearing, when the record so obviously demonstrates the fiction of the argument, further suggests that counsel for Knepper just does not get it. As Judge Grant stated, litigation is not a game. Courts are not a playing field for the amusement of attorneys and their clients.

Rule 3.3 of the Model Rules of Professional Conduct demands from attorneys a "duty of candor" to the courts. Not only did Peebles and Wagoner breach that duty of candor in the bankruptcy proceeding, but their presentation of the argument that Stelzer was "just hanging around" is a similarly disingenuous representation before this court.