In the Matter of RIMSAT, LTD., Debtor.

Bankruptcy No. 95–10120.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 2, 1998.

Richard Wyron and Warren Fitch, Washington, D.C., for Tongasat.

John Sieger, Chicago, IL, for Kauthar.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

For more than a year, Kauthar Sdn. Bhd. and its counsel [1] engaged in a course of conduct designed to make litigation as difficult, unpleasant, time-consuming and expensive as possible, for everyone involved. One result of that strategy is a motion for sanctions, filed on behalf of the Friendly Islands Satellite Communications Company (Tongasat), as a result of a deposition taken on August 11, 1997. It is the issues raised by that motion and Kauthar's response thereto that are presently before the court for a decision.

In connection with its objection to the Chapter 7 trustee's motion to compromise Tongasat matters [2] Kauthar served notices for the depositions of representatives of Tongasat, including the Princess of Tonga ("the Princess") and Edward Lau, Tongasat's general counsel. Tongasat filed a motion for protective order, to which Kauthar objected. The motion was granted. The court conclud-

1. Kauthar's counsel of record are Daniel J. Voelker, William J. Factor and William N. Howard of the law firm Seyfarth, Shaw, Merriweather & Geraldson in Chicago, Illinois.

2. Trial of the issues raised by Kauthar's objection to the trustee's motion to compromise was held on August 14, 1997. Kauthar's objections were overruled and the trustee's motion was granted on September 11, 1997. *See Matter of Rimsat, Ltd.*, 224 B.R. 685 (Bankr.N.D.Ind.1997), *aff'd*, No. 1:97cv393 (N.D.Ind. Mar. 17, 1998).

ed that, given her asserted lack of personal knowledge concerning the issues raised by the proposed compromised, the deposition of the Princess could be dispensed with and Kauthar was limited to deposing Mr. Lau.[3] In doing so, however, the court indicated that if he was not able to answer Kauthar's questions the issue might have to be revisited.

Mr. Lau's deposition was held in Fort Wayne on August 11, 1997. Mr. Lau came from San Francisco and Tongasat's bankruptcy counsel, Warren Fitch, came from Washington D.C. for the occasion. Kauthar sent two of its attorneys, William Howard and Daniel Voelker, who came from Chicago. Also present were Mark Warsco, counsel for the Chapter 7 trustee and John Burns, counsel for Rimsat's Class C shareholders.

The deposition lasted less than an hour until it was terminated by Kauthar. During that time, Mr. Lau was subjected to abusive examination and improper questioning, which served no other purpose than to harass. The transcript is replete with examples of inappropriate questioning, incivility and the uncalled for abuse of a deponent by Mr. Voelker. Not once did he make even a half-hearted effort to ask Mr. Lau questions relating to the substance of the claims being compromised, Tongasat's relationship and/or negotiations with the Russians, or Tongasat's negotiations or communications with the Chapter 7 trustee regarding the proposed compromise. Although Mr. Lau indicated his willingness to answer appropriate questions and even suggested possible topics, (*see* Lau Dep. at pp. 65–66), Mr. Voelker chose not to do so. Instead, he persisted in asking questions that related to things other than the compromise and that could only have been designed with the specific purpose of drawing an objection.

Within hours after terminating Mr. Lau's deposition, Kauthar filed a Motion to Compel Deposition of the Princess and a Motion to Set Emergency Hearing. By them, Kauthar asked the court to reconsider its ruling concerning the Princess' deposition. The certificate of service for these motions indicates that they were prepared and served on August 8, 1997, prior to Mr. Lau's deposition. The motion was supplemented on August 14, 1997, in which Kauthar asked the court to compel the Princess' deposition prior to going to trial on its objections to the Trustee's proposed compromise with Tongasat. Of course, since the trial was scheduled to begin on that date, this could not possibly be done without delaying those proceedings.

Mr. Voelker's conduct during the deposition prompted Tongasat to file the motion for sanctions presently before the court. The motion is based upon Bankruptcy Rules 9011, 7026(a) and 7030(g), as well as the court's authority under § 105(a) of the United States Bankruptcy Code. Although sanctions are fully justified, the procedural rules upon which Tongasat relies upon do not provide a completely satisfactory vehicle for adequately responding to counsels' conduct. Each of them has some shortcoming which makes them less than completely effective. Accordingly, the court finds it necessary to supplement those rules with the power conferred by § 105(a).

█ Rule 30(g) of the Federal Rules of Civil Procedure is made applicable to proceedings before the bankruptcy court by Rule 7030 of the Federal Rules of Bankruptcy Procedure. It authorizes the court to require the party giving notice of a deposition to pay the reasonable expenses, including attorney fees, that another party incurs by attending, where the noticing party fails to attend and proceed with the deposition. The rule, thus, provides a vehicle for recovering expenses that have needlessly been imposed upon a litigant because a party does not proceed with a deposition it arranged. Tongasat suggests that the court should look to this purpose and, by analogy, apply the rule to Mr. Lau's deposition because Kauthar did not go (and had no intention of going) forward with it, at least in the sense of actually accomplishing anything.

---

**3.** "Pre-trial discovery is time-consuming and expensive; it protracts and complicates litigation; and judges are to be commended rather than criticized for keeping tight reigns on it." *Olivieri*

*v. Rodriguez,* 122 F.3d 406, 409 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998).

Although appealing, the court declines Tongasat's suggestion. Kauthar seems to have met its obligations under Rule 30(g); it appeared for and proceeded with Mr. Lau's deposition. The problem lies in the way in which it proceeded. Rather than asking questions designed to elicit information concerning the merits of the proposed compromise, it pursued a totally different line of inquiry; one that would obviously draw objections, instructions not to answer and other unproductive responses. Admittedly, the deposition accomplished nothing in a substantive sense. Nonetheless, the court is reluctant to read such a requirement into Rule 30(g). *But see Fino v. McCollum Mining Co.*, 93 F.R.D. 455 (N.D.Tex.1982) (Defendant entitled to an award of costs under Rule 30(g) where depositions produced no evidence pertinent to plaintiff's case because most of the witnesses plaintiff indicated would voluntarily appear and testify did not and most of the testimony actually taken was testimony and argument of the lawyers). That would do little more than create additional possibilities for satellite litigation, over whether a particular deposition accomplished anything of substance and, if not, the reasons why. The situations where, as here, an attorney would consciously misuse its opportunity for a deposition are sufficiently rare and, when they do arise, other means are available for responding to them, so that it is unnecessary to read into Rule 30(g) the requirement that an attorney noticing a deposition accomplish something of substance with it. So long as counsel appears for and proceeds with a deposition it has noticed, it has fulfilled its obligations under the rule.

Improper discovery requests, responses and objections are governed by Rule 26(g) of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy proceedings by Bankruptcy Rule 7026.[4] This rule parallels Rule 11 and requires that all discovery requests, responses and objections must be signed, certifying, *inter alia*, that the request is:

> (A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;

> (B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and

> (C) not unreasonably or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

\* \* \* \*

(3) If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose on the person who made the certification, the party upon whose behalf the request ... is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Fed.R.Civ.P. 26(g); Bankr.Rule 7026.

■ The standard for imposing sanctions pursuant to Rule 26(g) is much the same as the standard for imposing sanctions under Rule 11 (and Rule 9011). *See Insurance Benefit Administrators, Inc. v. Martin*, 871 F.2d 1354, 1360 (7th Cir.1989); *In re Byrd*, 927 F.2d 1135 (10th Cir.1991); *Apex Oil Co. v. Belcher Co. of New York*, 855 F.2d 1009, 1017 (2d Cir.1988). In determining whether a discovery request was interposed for an improper purpose, the court must inquire into the signer's motivation or reasons for making the request. The question calls for "an objective determination of whether a ... party's conduct was reasonable under the circumstances." *Brown v.*

---

4. Because it is more specifically tailored to the discovery context, the courts that have addressed the issue have concluded that improper discovery requests are governed by Rule 26(g), rather than Rule 11. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir.1986); *United Missouri*

*Bank of Kansas v. Bank of New York*, 723 F.Supp. 408, 414 (W.D.Mo.1989); *In re Weinberg*, 163 B.R. 681, 684 (Bankr.E.D.N.Y.1994). *See also Insurance Benefit Administrators, Inc. v. Martin*, 871 F.2d 1354, 1361 (7th Cir.1989).

*Federation of State Medical Boards,* 830 F.2d 1429, 1435 (7th Cir., 1987). *See also Pacific Dunlop Holdings v. Barosh,* 22 F.3d 113, 118 (7th Cir.1994); *Beeman v. Fiester,* 852 F.2d 206, 209 (7th Cir.1988); *Ballato v. Ballato,* 190 B.R. 447, 448 (M.D.Fla.1995).

Tongasat contends that Kauthar's attorneys used the deposition for improper purposes, to unnecessarily increase costs and to inconvenience the other parties involved, and that Kauthar intentionally sabotaged the deposition in hopes of delaying the August 14th trial. According to Kauthar, however, Mr. Lau was an uncooperative and improper deponent, who refused to answer questions based upon a lack of personal knowledge and the attorney-client privilege. Accordingly, Kauthar claims that, after receiving a series of "I don't knows" and "I can't answers", it decided to terminate the deposition early, so as not to waste any more of the parties' time and money.

Kauthar's version of the events is simply not supported by the transcript of Mr. Lau's deposition. Any inability to get information from Mr. Lau appears to be less a result of Mr. Lau's lack of cooperation than of Mr. Voelker's unwillingness to ask the right questions. Mr. Lau's "I don't knows" and "I can't answers" appear to be the inevitable and understandable result of Mr. Voelker's repeated insistence on asking Mr. Lau to repeat such things as "every single word … the Princess uttered" during his meetings with her. (*See e.g.* Lau Dep. at pp. 20, 59–60, 66–67, 68). A reasonable attorney would have asked questions directed to the issues associated with the claims being compromised, rather than following the unreasonable line of inquiry pursued by Kauthar's counsel.

The conduct of Kauthar's attorneys at the deposition is, in the court's opinion, truly the icing on the cake. Viewed in light of their conduct over the previous year,[5] the unrea-

sonable behavior at Mr. Lau's deposition leads the court to the conclusion that Kauthar's true purpose in deposing him had little to do with obtaining relevant information concerning the proposed compromise and everything to do with increasing the costs and inconvenience of the litigation, harassing Tongasat's agents, and delaying the resolution of the case. The fact that its motion to compel the deposition of the Princess was already prepared and served, before the deposition, supports the court's conclusion that Kauthar had no intention of even trying to obtain relevant information from Mr. Lau and that the decision had been made to sabotage the deposition in advance. Indeed, had Mr. Lau's deposition been successfully completed, Kauthar would have had *no basis to* seek to depose the Princess. Kauthar's counsel have violated the spirit of the discovery rules by using the deposition "as a tactical weapon rather than to explore [the] claims and the facts connected therewith." *In re Weinberg,* 163 B.R. 681, 684 (Bankr. E.D.N.Y.1994). *See also In re Olympia Holding Corp.,* 189 B.R. 846, 855 (Bankr. M.D.Fla.1995).

Kauthar's response to the motion for sanctions only reinforces the court's conclusion that sanctions are in order. It all but refuses to acknowledge that it is its conduct at Mr. Lau's deposition that is at issue. Most of the response is devoted to arguing about the court's ruling on Tongasat's motion for protective order and that if anyone should be sanctioned, it is Tongasat. Even if Tongasat would have been responsible for improperly frustrating Kauthar's attempts to obtain discovery, that does not excuse the improper behavior of its counsel. "Lawyers are obligated to adhere to ethical strictures regardless of perceived transgressions of other participants in litigation." *Matter of Fisher,* 684 N.E.2d 197, 199 (Ind.1997). *See also Matter of Atanga,* 636 N.E.2d 1253 (Ind.1994) (law-

---

5. "For a year [Kauthar's counsel] have apparently embarked upon what appears to be a conscious effort to maximize litigation and, in doing so, make certain that the litigation is as time-consuming, difficult, unpleasant, and expensive as humanly possible. That is something that no Court, no litigant, and no lawyer should ever have to put up with."

"I have admonished. I have warned. I have threatened. For a year. Apparently without success, in view of what the deposition appears to have been. So, I regard the conduct reflected in that deposition as potentially being simply the icing on the cake." (Judge Grant, Transcript of Excerpt of August 14, 1997 Hearing, at p. 6, ln. 1–13.)

yer who knowingly disobeyed an obligation of a tribunal violated the Rules of Professional Conduct despite the "troubling" conduct of the judge and opposing counsel).

 The efficacy of imposing sanctions under either Rule 26(g) or Rule 9011 is problematic. The sanctions contemplated by those rules can only be imposed upon the individual attorney who actually signed the offending document and/or the party on whose behalf it was submitted. *See Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 123–25, 110 S.Ct. 456, 458–59, 107 L.Ed.2d 438 (1989) (Rule 11); *Melrose v. Shearson/American Express, Inc.,* 898 F.2d 1209, 1217 (7th Cir.1990) (Rule 11). Sanctions cannot be imposed against an attorney who did not sign the improper document or discovery request.[6] In this instance, only Mr. Factor signed the notice calling for Mr. Lau's deposition and, thus, only he can be the object of sanctions. This remains so even though Mr. Voelker and Mr. Howard were the attorneys who attended the deposition at which the abusive discovery set in motion by that notice reached its maturity. Consequently, although Kauthar's attorneys have acted in concert and are all deserving of sanction for their roles in Kauthar's discovery abuse, Rules 26(g) and 9011 are not the vehicles by which this can be accomplished.

 Section 1927 of Title 28 gives federal courts the authority to require an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to pay the excess costs, expenses and reasonable attorneys fees incurred because of such conduct. 11 U.S.C. § 1927. Sanctions under § 1927 are appropriate where an attorney "has acted in an objectively unreasonable manner by engaging in a serious and studied disregard

for the orderly process of justice." *Walter v. Fiorenzo,* 840 F.2d 427, 433 (7th Cir.1988). The conduct of Kauthar's counsel falls squarely within this definition. Kauthar sought to depose Mr. Lau, yet, when that time came, its attorneys consciously chose to waste the opportunity, only to turn around and demand yet another deposition. Their attempted justification for this behavior, as a rational reaction to an uncooperative and inappropriate witness, is simply not consistent with the transcript of the deposition. The only reasonable explanation for such conduct is that they were attempting to delay the August 14th trial and were more interested in wasting everyone else's time and needlessly increasing the costs of that litigation than in seeking relevant information. Such purposes are improper and sanctionable, as an abuse of discovery and the judicial process. *Accord Castillo v. St. Paul Fire & Marine Ins. Co.,* 938 F.2d 776 (7th Cir.1991) (affirming sanctions imposed under § 1927 for discovery abuse); *Perkins v. General Motors Corp.,* 129 F.R.D. 655 (W.D.Mo.1990), *aff'd,* 965 F.2d 597 (8th Cir.1992) (imposing sanctions under § 1927 and Rule 26(g) where plaintiff's counsel intentionally withheld name of crucial witness in order to surprise defendant at trial and signed discovery responses which were incomplete and inaccurate.)

 Although the conduct of Kauthar's counsel violated § 1927, bankruptcy courts do not have the authority to impose sanctions pursuant to that statute. *See Matter of Volpert,* 110 F.3d 494, 497 (7th Cir.1997). Nonetheless, the Seventh Circuit has held that bankruptcy courts do possess the authority to sanction such conduct under 11 U.S.C. § 105(a).[7] *Id.* at 501. *See also In re Rain-*

---

6. Although Rule 11 was amended in 1993 to permit sanctions to be imposed upon an entire law firm, a similar amendment to Bankruptcy Rule 9011 did not become effective until December 1, 1997. Since the actions of Kauthar's counsel occurred before that date, it is the prior version of Rule 9011 that would apply. Furthermore, corresponding amendments have not been made to Rule 26(g). Accordingly, that rule still continues to authorize sanctions only as to the individual who signed the document in question and/or the party on whose behalf it was submitted.

7. Section 105(a) provides in pertinent part:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

bow Magazine, 77 F.3d 278, 283–84 (9th Cir. 1996); In re Courtesy Inns, Ltd., 40 F.3d 1084, 1089 (10th Cir.1994); Knepper v. Skekloff, 154 B.R. 75 (N.D.Ind.1993). Thus, § 105(a) permits bankruptcy courts to impose sanctions against both parties and counsel who wilfully abuse the judicial process. Volpert, 110 F.3d at 501; Knepper, 154 B.R. at 80.

■ For one reason or another, the traditional tools available for imposing sanctions against Kauthar and its attorneys are not completely adequate to address the conduct at issue. As a result, the court finds it necessary to rely upon the broad equitable powers given to bankruptcy courts by § 105(a) and upon its inherent power to impose sanctions for the bad faith conduct of litigation to fill in the gaps. See Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In reaching this conclusion, the court is mindful that it should invoke these powers cautiously. Id.; Knepper, 154 B.R. at 80.

■ Having concluded that sanctions are in order, the court must determine the appropriate sanction. The nature and amount of any sanction is committed to the court's discretion. "[It] may impose a penalty as light as a censure and as heavy as is justified—a fine that may exceed the amount of fees incurred by the opposing party." Frantz v. United States Powerlifting Federation, 836 F.2d 1063, 1066 (7th Cir.1987). This does not mean that anything goes, however. "[D]iscretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" Id. (citations omitted). Thus, the court should strive to fashion "the least severe sanction [that is] adequate to

serve the purpose...." Brown, 830 F.2d at 1437 (citations omitted).

■ In determining an appropriate sanction, the court is to be guided by the purposes they are to serve. One of those purposes is to compensate parties for the attorneys fees and expenses unnecessarily incurred as a result of the sanctioned party's conduct. In re Sowers, 97 B.R. 480, 487 (Bankr.N.D.Ind.1989). Yet, sanctions also serve a larger purpose. They have a deterrent function, to discourage the sanctioned party and others from engaging in improper conduct in the future. Brown, 830 F.2d at 1438. This goal is even more important than the goal of compensation. Id.; Sowers, 97 B.R. at 489. See also In re Martin, 208 B.R. 807, 811 (N.D.N.Y.1997), aff'd sub nom. Martin v. Schaap Moving Systems, Inc., 152 F.3d 919 (2nd Cir.1998)

■ In its original motion, Tongasat sought the sum of $10,890.81.[8] This amount represents attorneys fees and expenses it incurred in connection with Mr. Lau's deposition. In support of the request, Tongasat submitted the affidavits of attorneys Mr. Fitch and Richard Wyron, substantiating the fees and expenses associated with their participation in and preparation for the deposition.[9] In its response to the motion for sanctions, Kauthar offers no suggestion or argument that the hourly rates of the attorneys involved, the time they devoted to the matter, or the expenses they incurred are not reasonable and do not represent an appropriate monetary sanction.[10] Based upon the supporting documentation accompanying Tongasat's original motion, the court finds that the attorney fees and expenses it seeks, in the sum of $10,890.81, represent reasonable fees and expenses incurred as a result of Mr. Lau's abusive deposition and, in view of

8. In its reply brief, in addition to the fees and expenses sought by the original motion, Tongasat requested another $10,975, due to the fees and expenses attributable to Mr. Lau's and a Mr. Wong's involvement with the deposition. Kauthar has objected to the consideration of these additional fees, arguing that the request comes too late. The court agrees. Accordingly, its consideration of the issue will be limited to the arguments associated with the fees and expenses initially sought by Tongasat.

9. Mr. Fitch's attorneys fees are $8,140 and expenses $759.56. Mr. Wyron's attorneys fees are $1,991.25.

10. Kauthar's only arguments concerning either the reasonableness or the propriety of the fees sought by Tongasat came in its surreply, after Tongasat sought the additional $10,975 in its reply brief. Since the court is not considering awarding those fees, the court need not consider Kauthar's arguments concerning them.

the compensatory purposes sanctions are to serve, an appropriate monetary sanction. Furthermore, since the conduct of that deposition is but an example of the overall litigation strategy pursued by Kauthar and it counsel, this sanction should be imposed upon both Kauthar and its attorneys. *See In re Boyd,* 143 B.R. 237, 242 (Bankr.C.D.Cal. 1992); *In re Alberto,* 119 B.R. 985, 993 (Bankr.N.D.Ill.1990); *Matter of Pasko,* 97 B.R. 913, 918 (Bankr.N.D.Ill.1988).

 In addressing Tongasat's motion for sanctions at the August 14th hearing, the court expressed its concern that, should it ultimately determine sanctions were in order, monetary sanctions alone would not be enough to serve their deterrent purpose. In light of their conduct over the previous year, the court advised Kauthar's counsel that it was considering imposing a more severe sanction—vacating the permission it had given allowing them to appear *pro hac vice.* (*See* Transcript of Excerpt of August 14, 1997 Hearing at p. 6 ln. 1 – p. 7 ln. 6). Kauthar's attorneys were specifically advised their *pro hac vice* status was in jeopardy and were invited to address this possibility in their response to Tongasat's motion for sanctions. Counsel ignored the invitation and did not do so. Kauthar's response did not address either the court's authority to revoke counsels' *pro hac vice* admission or suggest any reason why doing so is not appropriate. Having been explicitly warned about the most serious consequence facing them and then failing to respond when given the opportunity, it would seem that Kauthar may have waived any argument over the issue. *Matter of Kroner,* 953 F.2d 317, 320 (7th Cir.1992) (issues not raised at trial are waived).

 At least to some extent, the decision to grant or revoke the permission to appear *pro hac vice* is a matter committed to the trial court's discretion. *D.H. Overmyer, Co., Inc. v. Robson,* 750 F.2d 31 (6th Cir. 1984). *See also Panzardi–Alvarez v. United States,* 879 F.2d 975, 980–81 (1st Cir.1989). Attorneys appearing *pro hac vice* are not, however, held to more rigorous standards than those governing other members of the bar. *United States v. Collins,* 920 F.2d 619, 626 (10th Cir.1990). Furthermore, once per-

mission to appear has been granted, it should not be revoked without giving counsel notice that the court is considering doing so. *In re Tutu Wells Contamination Litigation,* 120 F.3d 368, 380–81 (3rd Cir.1997); *Kirkland v. National Mortgage Network, Inc.,* 884 F.2d 1367 (11th Cir.1989); *Johnson v. Trueblood,* 629 F.2d 302 (3rd Cir.1980). Nonetheless, like disqualification, revocation of an attorney's *pro hac vice* admission is an available sanction in response to counsel's misconduct. *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985); *Overmyer,* 750 F.2d at 34. But, it is not a step to be taken lightly, because it adversely implicates not only counsel's livelihood, *Johnson,* 629 F.2d at 303, but also the client's entitlement to counsel of its choice. *Kleiner,* 751 F.2d at 1210.

Revocation of an attorney's *pro hac vice* status is a harsh sanction, perhaps one of the harshest the court could fashion. Nonetheless, "[e]xtreme circumstances call for extreme measures to maintain the integrity and order of the litigation process." *Martin,* 208 B.R. at 811.

'[T]he most severe in the spectrum of sanctions ... must be available to the ... court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.' *Kleiner,* 751 F.2d at 1209–1210 (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976)).

Despite repeated warnings from this court, "[r]ather than devoting [their] efforts to the 'just speedy, and inexpensive' determination of this case, [counsel] engaged in abusive litigation tactics that delayed the proceeding of the case and increased expense for both parties and the judicial system." *Perkins v. General Motors Corp.,* 129 F.R.D. 655, 660 (W.D.Mo.1990), *aff'd,* 965 F.2d 597 (8th Cir. 1992). Furthermore, when viewed against the backdrop of their previous actions and "Kauthar's unthinking 'file and litigate anything we can think of, just for the sake of doing so' approach to this case", (Decision

and Order of April 11, 1997 at p. 1), counsels' conduct at Mr. Lau's deposition is not an isolated event. Instead, it represents only the most recent manifestation of their overall litigation strategy.

Monetary sanctions alone are not sufficient to serve both the compensatory and the deterrent purposes for which sanctions are imposed. Radical surgery is needed.

> Members of the legal profession have an obligation not only to their clients, but also to the court and all of civilized society ... [T]he failure of lawyers to subscribe to appropriate standards of professional conduct holds the legal profession up to public scorn and contempt. Such conduct leaves a tarnish which, if not contained, threatens to undermine further the standing of the profession and the judicial system we are sworn to uphold. *In re Green Rivers Forest, Inc.*, 190 B.R. 477, 485 (Bankr.M.D.Ga. 1995).

In light of their conduct throughout this case, their failure to heed this court's repeated warnings, culminating with the consciously improper conduct exhibited during Mr. Lau's deposition, the court is convinced that revocation of counsels' *pro hac vice* admission is the only sanction that will effectively deter not only Kauthar and its counsel, but also other litigants, from the type of improper conduct demonstrated in this case. Anything less would be the equivalent of using "a cardboard sword when a dragon looms." *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir.1990).

The motion for sanctions will be granted. Kauthar and its counsel will be required to pay Tongasat the sum of $10,890.81, the orders permitting Daniel J. Voelker, William J. Factor and William N. Howard to appear before this court *pro hac vice* will be revoked and their appearances stricken. An order doing so will be entered.