Natalie M. GRIDER, M.D.; Kutztown Family Medicine, P.C.

v.

KEYSTONE HEALTH PLAN CENTRAL, INC.; Highmark, Inc.; John S. Brouse; Capital Blue Cross; James M. Mead; Joseph Pfister Capital Blue Cross; Keystone Health Plan Central, Inc., Appellants

Natalie M. Grider, M.D.; Kutztown Family Medicine, P.C.

v.

Keystone Health Plan Central, Inc.; Highmark, Inc.; John S. Brouse; Capital Blue Cross; James M. Mead; Joseph Pfister Highmark, Inc., Appellant

Natalie M. Grider, M.D.; Kutztown Family Medicine, P.C.

v.

Keystone Health Plan Central, Inc.; Highmark, Inc.; John S. Brouse; Capital Blue Cross; James M. Mead; Joseph Pfister Hangley Aronchick Segal & Pudlin; John S. Summers, Appellants

Natalie M. Grider, M.D.; Kutztown Family Medicine, P.C.

v.

Keystone Health Plan Central, Inc.; Highmark, Inc.; John S. Brouse; Capital Blue Cross; James M. Mead; Joseph Pfister Stevens & Lee; Daniel B. Huyett; Jeffrey D. Bukowski, Appellants

Natalie M. Grider, M.D.; Kutztown Family Medicine, P.C.

v.

Keystone Health Plan Central, Inc.; Highmark, Inc.; John S. Brouse; Capital Blue Cross; James M. Mead; Joseph Pfister Stradley, Ronon, Stevens & Young; Sandra A. Girifalco, Appellants.

Nos. 08–3073, 08–3074, 08–3075, 08–3076, 08–3077.

United States Court of Appeals, Third Circuit.

Argued July 9, 2009.

Filed: Sept. 1, 2009.

122

Malcolm J. Gross, Kimberly G. Krupka, Gross, McGinley, LaBarre & Eaton, Allentown, PA, Timothy D. Katsiff, Matthew J. Siembieda, (Argued), Blank Rome Philadelphia, PA, for Appellant Capital Blue Cross, Nos. 08–3073/3074/3075/3076/3077, Keystone Health Plan Central, Inc., Nos. 08–3073/3074/3075/3076/3077.

Kevin M. Passerini, Jeremy A. Rist, Blank Rome, Philadelphia, PA, for Appellant Capital Blue Cross and Keystone Health Plan Central, Inc., No. 08–3073.

Errol C. Deans, Jr., Gross, McGinley, LaBarre & Eaton, Allentown, PA, Norman E. Greenspan, Blank Rome Philadelphia, PA, for Appellant Capital Blue Cross, Nos. 08–3074/3075/3076/3077, Keystone Health Plan Central, Inc., Nos. 08–3074/3075/3076/3077.

Daniel I. Booker, Donna M. Doblick, (Argued), James C. Martin, Colin E. Wrabley, Reed Smith, Pittsburgh, PA, for Defendant–Appellee Highmark, Inc., Nos. 08–3073/3075/3076/3077, Highmark, Inc., No. 08–3074.

Barbara W. Mather, (Argued), Alison A. Gross, Jan P. Levine, Pepper Hamilton, Philadelphia, PA, for Appellants Hangley, Aronchick, Segal & Pudlin & John S. Summers, No. 08–3075, Hangley, Aronchick, Segal & Pudlin, Nos. 08–3073, 80–3074/3075/3076/3077.

Lawrence J. Fox, (Argued), Elizabeth Y. McCuskey, William M. McSwain, Drinker, Biddle & Reath, Philadelphia, PA, for Appellants Stevens & Lee, P.C., Daniel B. Huyett, Jeffrey D. Bukowski, Nos. 08–3073/3074/3075/3076/3077.

Michael D. O'Mara, (Argued), C. Clark Hodgson, Jr., Neal R. Troum, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Appellant Sandra A. Girifalco, Esq. & Appellant Stradley, Ronon, Stevens & Young, No. 08–3077.

Sandra A. Girifalco, Reed Smith, Pittsburgh, PA, for Appellant Stradley, Ronon, Stevens & Young, Nos. 08–3073/3074/3075/3076.

Thomas B. Fiddler, White & Williams, Philadelphia, PA, for Appellant James M. Mead, Nos. 08–3074/3075/3076/3077.

Malcolm J. Gross, Kimberly G. Krupka, Gross, McGinley, LaBarre & Eaton Allentown, PA, Patrick J. O'Connor, Matthew J. Siegel, Cozen & O'Connor, Philadelphia, PA, for Appellant James M. Mead, Nos. 08–3073/3074/3075/3076/3077.

Anthony J. Bocchino, (Argued), Haines & Associates Philadelphia, PA, Francis J. Farina, Devon, PA, Timothy M. Fraser, Ellen Meriwether, Michael J. Willner, Cafferty Faucher, Philadelphia, PA, Kenneth A. Jacobsen, Wallingford, PA, Joseph A. O'Keefe, O'Keefe & Sher Kutztown, PA, for Appellee Natalie M. Grider, Nos. 08–3073/3074/3075/3076/3077 & Appellee Kutztown Family Medicine, P.C., Nos. 08–3073/3074/3075/3076/3077.

Daniel I. Booker, Jeremy D. Feinstein, Sandra Girifalco, Mary J. Hackett, William T. Mandia, Mark L. Tamburri, Dianna C. Wyrick, Reed Smith, Pittsburgh, PA, for Appellee John S. Brouse, No. 08–3073, John S. Brouse, Nos. 08–3074/3075/3076/3077.

Norman E. Greenspan, Blank Rome, Philadelphia, PA, Malcolm J. Gross, Gross, McGinley, LaBarre & Eaton, Allentown, PA, Timothy D. Katsiff, Morgan, Lewis & Bockius, Philadelphia, PA, for Appellant Joseph Pfister, Nos. 08–3073/08–3074/3075/3076/3077.

Joseph B.G. Fay, Marc J. Sonnenfeld, Morgan, Lewis & Bockius, Philadelphia, PA, Robert C. Heim, Dechert, Philadelphia, PA, for Amicus Curiae Appellant Philadelphia Bar Association, Nos. 08–3073/3074/3075/3076/3077.

Before SLOVITER, AMBRO, and JORDAN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

The promulgation of the Federal Rules of Civil Procedure ushered in a new era of federal litigation, directed to the goal of securing "the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1. It would be reasonable to expect, in light of all the applicable rules and governing precedents, that experienced attorneys, especially those who have handled major litigation, would be able to proceed through the discovery and pretrial stages with a conciliatory attitude and a minimum of obstruction, and that, under the guiding hand of the district court, the path to ultimate disposition would be a relatively smooth one. The record of the case before us shows exactly the opposite. The parties were unable to reach agreement on even minor matters and the discovery was noncompliant, delayed, or protracted, leading to the District Court's entry of the sanction orders that are the subject of these appeals. We conclude, without enthusiasm, that none of the players is without responsibility for the unfortunate state of affairs that developed, but we view with particular concern the lawyers' attitude and conduct toward the district judge who, if given more cooperation, would undoubtedly have been able to preside more effectively.

## I.

### Factual Background

Keystone Health Plan Central, Inc., ("Keystone"), Capital Blue Cross ("Capital"), and Highmark Inc., ("Highmark"), together with three law firms that represented them in the class action law suit in the District Court, Hangley Aronchick Segal & Pudin, and its partner John S. Summers, and Stevens & Lee, P.C., its partners Jeffrey D. Bukowski and Daniel B.

Huyett, and Stradley, Ronon, Stevens & Young, LLP, and its partner, Sandra A. Girifalco, appeal two District Court orders imposing sanctions and the order denying the motion to vacate.

Natalie M. Grider, M.D., and her medical practice, Kutztown Family Medicine, P.C., filed the class action underlying this appeal on October 5, 2001, in Pennsylvania state court on behalf of a state-wide class of doctors and medical practices ("Plaintiffs") that were medical "providers with the Keystone health maintenance organization." *Grider v. Keystone Health Plan Central, Inc.*, 500 F.3d 322, 324 (3d Cir. 2007). Plaintiffs alleged that Keystone failed to pay, or underpaid, Plaintiffs for medical services provided to Keystone's policyholders, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and Pennsylvania's "prompt pay" statute, 40 Pa. Cons.Stat. Ann. § 991.2101 *et seq. Grider*, 500 F.3d at 323. Plaintiffs also named as Defendants Capital and Highmark, each of which owned 50% of Keystone when the suit was filed, but now a wholly-owned subsidiary of Capital.[1] Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania on November 7, 2001.

The firm Hangley, Aronchick, Segal & Pudin and attorney Summers (together, "Hangley") represented Keystone from October 2003 to July 2006. The firm Stradley, Ronon, Stevens & Young LLP and attorney Girifalco (together, "Stradley") represented Highmark from January 2004 until at least July 24, 2007. The firm Stevens & Lee, P.C., and attorneys Bukowski and Huyett (together, "Stevens &

Lee") represented Capital in these proceedings until October 3, 2006.

**A. Discovery**

Discovery began in 2003 and ended five years later with the parties' settlement in February 2008. The process involved District Judge James Knoll Gardner, Magistrate Judge Arnold C. Rapoport, and Special Discovery Master Karolyn Vreeland Blume. Defendants moved to dismiss the complaint on January 23, 2002. On December 19, 2002, the case was transferred to the Honorable James Knoll Gardner, who granted in part, and denied in part, the motion on September 18, 2003. It appears that the plaintiffs made no discovery requests during that time, filing their first such request (which was related to class certification) in September 2003. Defendants entered into a joint-defense agreement sometime between October and the end of December 2003 and, as the District Court found, Summers (representing Keystone) "took the lead in defending this case on behalf of all defendants and their counsel," App. at 75, a statement Stradley denies.

Between 2003 and 2005, proceedings and conferences concerning discovery and other matters were held before Magistrate Judge Arnold C. Rapoport, to whom the District Court delegated such matters. Plaintiffs served five sets of discovery requests "directed to all defendants," App. at 8977, seeking information regarding subjects such as "capitation, provider reimbursement, complaints by providers about reimbursement and information concerning the elements that would be required to be proved for class certification." App. at 75.[2] Highmark estimates that the total

---

**1.** Three officers of the corporate Defendants, James M. Mead (Capital), John S. Brouse (Highmark), and Joseph Pfister (Keystone), were also named as Defendants, but were not sanctioned and are not parties to this appeal.

**2.** "A 'capitation' is 'an annual fee paid a doctor or medical group for each patient enrolled in a health plan.'" App. at 66 n. 17 (quoting Webster's Third New Int'l Dictionary 332 (1968)).

number of requests it alone received (counting subparts) was over 422.

Highmark, Keystone and Capital responded to each request. They interposed general objections to many of Plaintiffs' discovery requests. Those objections included that Plaintiffs sought privileged or confidential material, that the requests were vague and/or overly broad, and that Plaintiffs sought documents not in Defendants' possession or whose production would impose on Defendants undue burden or expense.

In addition to these general objections, each Defendant responded with specific objections to some of Plaintiffs' individual requests, such as objections on the same grounds as the general objections described above or on the ground that it had already responded to such a request in an earlier response. In addition, Defendants raised objections to the "definitions and instructions," claiming that Plaintiffs' use of terms in their requests was vague— such as using "the term 'Defendant' ... without specifying to which defendant they are referring." App. at 7281. Defendants assert that they produced documents despite these objections.[3] Defendants' responses span from December 2003 to November 2004.

As provided in Federal Rule of Civil Procedure 16, Judge Gardner held a status conference in January 2004 and at that time set discovery deadlines. The bickering among the parties ensured that the deadlines would not be met. Although the parties conferred frequently about discovery issues, the principal issues were not resolved. Plaintiffs requested that Defendants withdraw their general objections and Defendants repeatedly declined to do so. In addition, Keystone denied having the claims data, which was critical discovery information, requested by Plaintiffs or the ability to obtain such data from Synertech, its claims processor and a subsidiary of Keystone. Highmark advised Plaintiffs that it did not have Keystone's claims processing documents because it did not itself process such claims. Similarly, Highmark and Capital claimed not to possess documents related to audits of Keystone, but both parties eventually produced such documents at the last minute or late, years after plaintiffs' initial requests and not until after the appointment of the Special Discovery Master.

As all parties admit, the spirit of the discovery disputes was hostile. At the very least, it lacked the civility and professionalism one expects from such experienced attorneys. Plaintiffs filed a total of twelve motions for sanctions and/or contempt, seeking to sanction all Defendants and all their attorneys, as well as two nonparties and their counsel. Magistrate Judge Rapoport denied the five requests for sanctions or contempt before him.[4] Only two of Judge Gardner's subsequent rulings on the sanctions requests are the subjects of this appeal.

On April 26, 2004, Judge Gardner extended the original discovery deadlines of March 1, 2004, for class discovery and August 2, 2004, for all other discovery, to June 25, 2004, for class discovery and January 3, 2005, for all other discovery. In

**3.** For example, Highmark claims that it "produced hundreds of thousands of documents, and responded to dozens of interrogatories." Highmark Br. at 11. Although Highmark cites a span of appendix pages to support its position, those pages are its responses to document requests/interrogatories and do not make clear that it sent documents or how many it sent.

**4.** Apart from those appealed here, the remaining sanctions motions were never ruled on by the District Court, and were withdrawn by court order in connection with the subsequent settlement.

addition, "because of the inability of the parties to resolve any of their discovery disputes without intervention, [Judge Gardner] placed this matter into civil suspense [on August 5, 2004,] but required the parties to continue the discovery process." App. at 63. During this period, he required discovery and document production to continue to move forward. For all practical purposes, it did not, and instead the parties reached a discovery stalemate. Judge Gardner described the parties' behavior during the civil suspense period as follows: "From late 2004 into the summer of 2005 the parties continued their incessant motion practice and exhibited a complete inability to agree on even the most basic matters." App. at 63. On September 26, 2005, Judge Gardner ordered the case removed from civil suspense and set new discovery deadlines.

In the meantime, on July 26, 2005, Judge Rapoport granted "Plaintiffs' Combined Motion to Strike Defendants' 'General' and Other Objections," App. at 804, with the explanation that "[t]his Court notes that the parties have entered into a Stipulated Protective Order which protects their interests." App. at 804 n. 1 (listing the extensive general objections to be stricken). Defendants petitioned Judge Gardner for reconsideration of that order and, on November 2, 2005, Judge Gardner granted in part and denied in part those petitions for reconsideration. He stated, "[W]e decline to specifically address all of defendants' contentions because we conclude that the Stipulated Protective Order entered into between the parties may be a legal basis to strike some, but is not a legal basis to strike all, of defendants objections. Accordingly, to that extent, we agree with defendants that Judge Rapoport's Order is

clearly erroneous and contrary to law." App. at 1123 n. 1. The Court then ordered that the "defendants' general objections to plaintiffs' interrogatories and requests for productions of documents are referred to the Special Discovery Master." App. at 1124.[5]

At the beginning of the civil suspense period, Plaintiffs filed a request for the appointment of a special discovery master to help move discovery along. In late summer of 2004, Judge Gardner ordered all parties to brief whether a Special Master should be appointed to oversee discovery. The parties did so promptly and, on August 25, 2005, the Court entered an order appointing Karolyn Vreeland Blume as Special Discovery Master. Under the direction of Blume, including weekly meetings and intensive monitoring, discovery began to run more smoothly. On December 5, 2005, the Special Discovery Master wrote in an email to the parties: "It was not my intent to blame any party for the discovery delays that have occurred in this case. As I have stated on multiple occasions, the system has failed this case, and we are all trying to get it back on track at the eleventh hour. When you look at what has been accomplished due to everyone's diligent efforts in the last six weeks, it is truly amazing." App. at 10089. Over the next two years, however, she changed her view of the parties' cooperation. *See* p. 15 *infra.*

The parties disagree as to the cause of the improvement in the discovery process. Appellants attribute this improvement to Special Discovery Master Blume's new focus on Defendants' specific objections because, as Stradley argues, she "instructed Plaintiffs to provide a 'High Priority List'

---

**5.** Inexplicably, Judge Gardner, in his subsequent September 28, 2007 Sanctions Order, stated that Judge Rapoport granted plaintiffs' motion to strike, but he did not note that he had previously found that at least part of that order was "clearly erroneous and contrary to law." *See* App. at 82.

of those documents sought from Defendants that were most important to Plaintiffs' case," and to withdraw "220 of their pending discovery requests," and because the Special Discovery Master "concluded, just as Highmark had maintained all along, that Highmark had no obligation to produce the claims data Plaintiffs sought." Stradley Br. at 18–19. That was because Highmark did not have custody and control of the data when discovery requests were made.

In contrast, Appellees suggest that the improvement in document production was due to the "discovery" of "recently located" responsive documents that Defendants had previously denied existed or had failed to produce for more than a year. Appellees' Br. at 9–10. Appellees assert that "after the coincidental rash of 'recent discovery' by all Appellants of long sought after documents that coincided with the appointment [of] the Special Discovery Master, Appellants, and all of them, began to utilize a tactic of last minute, piecemeal, late production of discovery material, all of which was designed to frustrate and encumber the ability of the class action Plaintiffs to properly conduct discovery and prosecute their claims." Appellees' Br. at 10. To this effect, Special Discovery Master Blume noted the following on February 1, 2006: "Although document production has been ongoing, *tens of thousands of pages were produced yesterday*, the final day of [class] discovery." App. at 6800 (emphasis added). Moreover, the Special Discovery Master took the general objections "off the table," App. 10329, requiring that Defendants assert only specific objections, and noted that the "general objections filed by [D]efendants were a major barrier to discovery." App. at 7806.

On another occasion, Judge Gardner remarked that "[w]hile February 1, 2006 was

the deadline established by the court for the completion of class discovery in this matter, ... [d]ocuments offered and received into evidence at the class certification hearings included those produced on the evening of Friday, March 3, 2006 when defense counsel forwarded to plaintiffs' counsel computer disks containing thousands of pages of information regarding claims submissions." App. at 65 n. 16.

From March 6 to 10, 2006, Judge Gardner held a class certification hearing, officially closing the record on March 10, 2006. On December 20, 2006, he certified a class in this action, certified several factual and legal issues, and approved Dr. Grider as the sole class representative.

### B. The March 30, 2006 Order[6]

On July 20, 2005, shortly before the case was removed from civil suspense, Magistrate Judge Rapoport issued an order stating that "Defendants' Counsel are admonished for their violations of the Stipulated Protective Order," for placing highly confidential material in the public record that should have been kept under seal. App. at 803. He further ordered that "*all counsel are directed to strictly adhere to the terms of the Protective Order, and if counsel for any party fails to comply with this Order and violates [that order], other counsel may apply to the Court for imposition of appropriate sanctions.*" App. at 803 (emphasis in original). However, Magistrate Judge Rapoport did not explain the basis for his order until after Defendants petitioned Judge Gardner for reconsideration of the order, and the latter "remanded this matter to ... Magistrate Judge Arnold C. Rapoport to permit him the opportunity to file a Memorandum stating his reasons in support of his July 20, 2005 Order admonishing defendants." App. at 27.

---

**6.** The order was dated March 29, 2006, but filed March 30, which explains why some parties refer to the date of this order as March 29, 2006.

Accordingly, in an order dated March 27, 2006, Magistrate Judge Rapoport noted that Plaintiffs had moved for an injunction against Defendants to prevent them from continuing to file highly confidential documents in the public record without placing them under seal. Defendants argued that the issue was moot because they "took prompt and appropriate remedial action in isolated instances when inadvertent disclosure of a protected document was made." App. at 1937–38.

Magistrate Judge Rapoport ruled "that Plaintiffs did not meet the standard required for injunctive relief" and that "sanctioning Defendants' counsel was not an appropriate remedy for failure to comply with the ... Protective Order, particularly because counsel had already remedied any failure to comply with [that order]." App. at 1938 (footnote omitted). Instead, "the appropriate remedy was simply to admonish, or caution, Defendants' counsel, and also to warn *all* counsel that the terms of the Stipulated Protective Order should be followed. This Court [i.e., the Magistrate Judge] did not consider the admonition to be a sanction." App. at 1938–1939 (emphasis in original) (footnote omitted). In so concluding, Magistrate Judge Rapoport observed that *Black's Law Dictionary* defines a "sanction" as a " '[p]enalty or other mechanism of enforcement used to provide incentives for obedience with the law' " and defines "admonish" as " '[t]o caution or advise. To counsel against wrong practices, or to warn against danger of an offense.' " App. at 1938 nn. 2–3 (quoting

*Black's Law Dictionary* 1341, 48 (6th ed.1990)).

In light of Magistrate Judge Rapoport's explanation, Judge Gardner then denied Defendants' joint petition for reconsideration, affirming Magistrate Judge Rapoport's order on March 30, 2006 (the "March 30, 2006 Order"). In his Memorandum, Judge Gardner found that Magistrate Judge Rapoport's ruling was neither clearly erroneous nor contrary to law,[7] but expressly "disagree[d] with Judge Rapoport's conclusion that an admonishment is not a sanction." App. at 39. The March 30, 2006 Order is one of the three orders appealed.[8]

### C. The September 28, 2007 Sanctions Order

The day before Judge Gardner ruled on two of the sanctions motions filed by Plaintiffs in March and December 2006, Special Discovery Master Blume imposed sanctions for violations of Federal Rules of Civil Procedure 26(g)(3) and 37 on Capital, Keystone, and Crowell & Moring (the law firm that took over representation of Keystone from Hangley) and its partners Michael Martinez and Daniel Campbell. *Grider v. Keystone Health Plan Cent., Inc.*, No.2001–CV–05641, 2007 WL 2874423 (E.D.Pa. Sept. 27, 2007). She concluded:

Respondents have violated numerous provisions of Rules 37 and 26(g) ... by repeatedly interposing general, boilerplate objections to plaintiffs' document requests and ignoring numerous Orders of the Court, including those of Judge

**7.** A district court "may reconsider any pretrial matter ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

**8.** Between March 30, 2006, and the next sanctions order at issue, the September 28, 2007 order, the District Court entered an or-

der on January 19, 2007 enjoining Highmark and Capital from settling the Grider claims as part of the multidistrict litigation pending in the United States District Court for the Southern District of Florida (MDL No. 1334). This court reversed, finding that the District Court had abused its discretion. *See Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322 (3d Cir.2007).

Gardner and Judge Rapoport and the directives of the Master, and by repeating those objections in their [later responses]. Defendants' failure to comply with the discovery process should not be viewed in isolation but within the larger context of their other obstructionist tactics which manifest a similar contempt of the discovery obligations by these same parties.

*Id.* at *10. Special Discovery Master Blume's sanctions order is not before this court.

The following day, by order dated September 28, 2007, Judge Gardner issued the principal order before us (the "September 28, 2007 Sanctions Order"). That order followed nine days of hearings on the sanctions motions, at which Plaintiffs presented ten witnesses and 161 exhibits, and Defendants and their counsel (combined) presented six witnesses and 145 exhibits. *See* App. at 55–56. After the hearing, Judge Gardner's clerk requested that Plaintiffs submit certain "timeline charts ... [,] which, due to time constraints, plaintiffs were unable to use during closing argument" at the sanctions hearing. App. at 23222. Plaintiffs submitted the charts and underlying documents to the court, with copies to counsel for all Appellants. Thereafter, the District Court allowed Plaintiffs and Defendants to file post-hearing findings of fact.

In support of the September 28, 2007 Sanctions Order, Judge Gardner issued a 77–page opinion, including 93 numbered paragraphs containing findings of facts. *Grider v. Keystone Health Plan Cent., Inc.,* No.2001–CV–05641, 2007 WL 2874408 (E.D. Pa Sept. 28, 2007). Because many of the findings of fact are discussed in depth hereafter, we only briefly summarize Judge Gardner's conclusions here:

(1) All Appellants violated Rules 26(g)(2)(A) and (B) of the Federal Rules of Civil Procedure.

(2) All Appellants violated Rule 37(c)(1).[9]

(3) The law firm defendants and the individual attorneys violated 28 U.S.C. § 1927 and Local Rule 83.6.1 of the Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania.

However, Judge Gardner found there was not a proper basis to impose any sanctions (1) for violations of court orders;[10] (2) pursuant to other sections of Rule 37 of the Rules of Federal Civil Procedure or; (3) pursuant to the Court's inherent power to sanction.

Judge Gardner ordered Appellants to pay the Grider plaintiffs (1) for their "reasonable attorneys' fees" and costs related to the two motions for sanctions, (2) "for all sums paid by plaintiffs as fees to [the] Special Discovery Master," and (3) for their "reasonable attorneys' fees and costs" relating to proceedings before the Special Discovery Master. App. at 46. The Court ordered the plaintiffs to file a petition for the attorneys' fees and costs

**9.** The Court's opinion is ambiguous on this point. The "Conclusions of Law" section, which summarizes the sanctions ordered, stated that only the Party–Appellants violated that rule. However, the order imposed sanctions under Rule 37(c)(1) against all Appellants, and in the body of the opinion Judge Gardner concluded "that all defendants ..., together with their respective counsel, ... are each subject to sanctions pursuant to Rule 37(c)." App. at 116–17.

**10.** The Court explained that there was not a proper basis to impose sanctions against any of the Appellants for civil contempt for violations of any court orders because "plaintiffs have failed to prove by clear and convincing evidence that defendants have violated any court Order for which relief could be granted." App. at 118.

incurred and, in the meantime, determined that the sanctioned parties and counsel "shall each pay the following percentages:"

1. Keystone—25%
2. Capital—25%
3. John S. Summers, and "the law firm of Hangley," jointly and severally—25%
4. Highmark—10%
5. Sandra A. Girifalco, and the law firm of Stradley, jointly and severally—10%
6. Daniel Huyett, Jeffrey Bukowski, and the law firm of Stevens & Lee, jointly and severally—5%

App. at 46–47.

Each of the sanctioned parties petitioned this court for a writ of mandamus seeking an order requiring the District Court to vacate the sanctions. This court denied the petitions in a one-paragraph order.[11]

On October 30, 2007, Plaintiffs filed their fee petition seeking payment by Defendants of a fee of $3,244,612.50 (the "collective lodestar of [Plaintiffs] ... (that is, each [counsel's] total time multiplied by his current hourly rate")), and collective costs of $238,361.17. App. at 18557. However, because the parties settled the underlying class action before the District Court ruled on the fee petition, the sanctions were never quantified and reduced to monetary amounts.

### D. Settlement of the Underlying Litigation

Plaintiffs and Highmark entered into a settlement agreement on February 11, 2008, which provided for Highmark to pay stipulated amounts to the class members and attorneys' fees of up to $3,450,000. In return, Plaintiffs agreed to "expressly waive, release, and disclaim any right to the monetary component of any sanctions award that may be entered against [Highmark] or [its] current or former attorneys in the *Grider* Action." App. at 23332. Plaintiffs also agreed not to oppose Highmark's forthcoming motion "to vacate [the] Court's sanctions opinion and Order (dated September 28, 2007)." App. at 23334.

On March 12, 2008, Plaintiffs and Capital and Keystone (by this time, a wholly owned subsidiary of Capital) entered into a similar settlement agreement, which provided for Capital and Keystone to pay $7 million in attorneys' fees. In exchange, Plaintiffs agreed to "waive, release and forever discharge the amount of any sanctions awarded against Capital and Keystone and their current and former counsel by the Court." App. at 23549. Plaintiffs also agreed not to oppose Capital and Keystone's forthcoming motion to vacate the September 28, 2007 Sanctions Order.

The District Court subsequently approved both settlements, ordered Defendants to pay the attorneys' fees agreed upon in the settlement agreements, and issued orders dismissing with prejudice all claims against Highmark, Keystone, and Capital.

Keystone, Capital, and Highmark, joined by Hangley and Stevens & Lee, moved, unopposed, to vacate the September 28,

---

**11.** The order states:

In *Kerr v. United States District Court for the Northern District of California,* 426 U.S. 394[, 96 S.Ct. 2119, 48 L.Ed.2d 725] (1976), the Supreme Court instructed that the conditions for issuing a writ of mandamus include that "the party seeking issuance of the writ have no other adequate means to attain the relief he desires" and that the "right to issuance of the writ is clear and indisputable." *Id.* at 403 (internal quotation marks and citations omitted). In our view, it is not clear and indisputable from the record before us that the petitioners have a right to the relief requested. *See Cunningham v. Hamilton County, Ohio,* 527 U.S. 198, 205–206, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999). Accordingly, it is hereby ORDERED that the foregoing petitions for mandamus are DENIED.

App. at 23234.

2007 Sanctions Order. Stradley did not join those motions and did not file a separate motion. On June 25, 2008, Judge Gardner denied that motion.

All of the sanctioned parties filed notices of appeal. The law firms Hangley, Stevens & Lee, and Stradley, appeal the March 30, 2006 Order (Judge Gardner affirming Judge Rapoport's July 20, 2005 order and determining it was a sanction, not an admonition). All Appellants appeal the September 28, 2007 Sanctions Order. All Appellants, except Stradley, appeal the June 25, 2008 order denying Capital, Keystone, and Highmark's motions to vacate the September 28, 2007 Sanctions Order.

## II.

### Jurisdiction

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331.[12] Appellees argue that we lack jurisdiction over this appeal on the grounds of finality and mootness. For the reasons set forth here, we reject both arguments and exercise jurisdiction under 28 U.S.C. § 1291.

### A. Finality

■ Appellees contend that the orders appealed are not final because the District Court did not quantify the dollar amount of the sanctions. In response, Appellants argue that the orders on appeal became final on June 13, 2008, when the District Court entered orders approving the underlying settlements and dismissing all claims against all Defendants. The Appellants have the better argument.

■ "Ordinarily the proceedings in a district court must be final as to ... all causes of action and parties for a court of appeals to have jurisdiction over an appeal under 28 U.S.C. § 1291." *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 476 (3d Cir.2006). "The classic definition of a 'final decision' is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quotation omitted)). Moreover, "[t]he general rule is that 'a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.'" *Quackenbush*, 517 U.S. at 712, 116 S.Ct. 1712 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994)); *see also Morton*, 460 F.3d at 476 ("[O]nce all claims against all parties have been dismissed a prior order will become final for purposes of appeal under 28 U.S.C. § 1291.").

This court considered the issue of finality in the context of an appeal of a sanction order in *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080 (3d Cir.1988), where the court had entered an order imposing sanctions and a later order quantifying the dollar amount of the sanctions. We held that a final, appealable order was the one fixing the amount of the sanctions award. *Id.* at 1083; *see also Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999) (holding that sanctions order not final and appealable where proceedings below were still ongoing); *Lazorko v. Pennsylvania Hosp.*, 237 F.3d 242 (3d Cir.2000) (holding that sanctions order was not final and ap-

---

12. Although Appellees have nothing of monetary value at issue, their brief explains that they are participating in this appeal "in an effort to vindicate the law of discovery and its orderly and professional processes, and to defend a district judge with the courage to make good and hard judgments and rulings no matter what their popularity." Appellees' Br. at 27–28. In doing so, they also seek to sustain Judge Gardner's orders.

pealable until entry of order determining sanctions amount); *In re Jeannette Corp.,* 832 F.2d 43 (3d Cir.1987) (same).

The rule in *Napier* speaks to a different scenario than the one presented here. In *Napier,* we stated that the appeal of the sanctions order would have been premature because it could be brought later in the course of proceedings after entry of an order quantifying the dollar amount of the sanctions. This rule is in keeping with the finality requirement, which is intended to avoid piecemeal appeals. In the appeal before us, the District Court had already rendered a final order by June 13, 2008, by dismissing all claims. As a result, the finality concern that undergirds *Napier* is simply not implicated here.

Instead, we are guided by *Perkins v. General Motors Corp.,* in which a sister court of appeals held that it had jurisdiction over the appeal of a sanctions order even though the district court "never determined the monetary value of the sanctions." 965 F.2d 597, 599 (8th Cir.1992). In *Perkins,* the district court "levied sanctions against [the plaintiff and her attorney] for various abuses during trial and discovery." *Id.* at 598. However, before the district court could quantify the amount of the sanctions, "the parties settled the underlying case [and, as] part of the settlement agreement, [the defendant] joined [the plaintiff and her attorney] in moving the court to lift the sanction order." *Id.* The court declined to do so. *Id.* The plaintiff and her attorney appealed, *id.* at 599, and the respondent (the district court judge, as the Defendant did not participate in the appeal) argued that the court of appeals lacked jurisdiction because there "ha[d] been no final appealable order," *id.* & n. 3.

The Court of Appeals for the Eighth Circuit agreed that the initial sanction order was not final and appealable at the time it was issued, but held that the subse-

quent order denying the motion to lift the sanction order "made final the [earlier] sanction order." *Id.* at 599. The court reasoned as follows:

> While the district court did not assess a monetary penalty, [the defendant] informed the district court that it had agreed as part of the settlement not to collect any monetary sanctions. Therefore, it was reasonable for the district court to issue the sanction order without monetary penalty. The failure of the district court to go through the motions of assessing a dollar amount to penalties [the defendant] had agreed not to pursue does not prevent the sanction order from becoming final. The finality requirement should be given a "practical rather than a technical construction." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 375, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).

*Id.* at 599–600. In addition, the court reasoned that "compelling policy reasons" supported a holding that it had jurisdiction over such appeals:

> If an attorney is unable to appeal a sanction order after the underlying case has been settled, the attorney is left with no avenue of challenging the sanction order. The law encourages parties to settle disputes. An attorney must be free to settle cases when settlement is in the client's best interest. The refusal to grant jurisdiction over an appeal of sanctions after the underlying suit has been settled thrusts a personal conflict upon the attorney-by settling a case in the client's interest he may have to forfeit a personal right to appeal the sanctions levied against him.

*Id.* at 600; *see also Ritchie v. United States,* 451 F.3d 1019, 1022 (9th Cir.2006) (Although the district court did not quantify the sanctions order, the court of appeals had jurisdiction because the party seeking

# 133

sanctions had "expressly waived his right to monetary sanctions . . ., leaving nothing for the district court to decide.").

We agree with the reasoning of the Eighth Circuit in *Perkins* and hold that the District Court's order of June 13, 2008, which dismissed all claims against all parties with prejudice, rendered final the orders appealed here because it " 'end[ed] the litigation on the merits and le[ft] nothing for the court to do but execute the judgment.' " *Quackenbush*, 517 U.S. at 712, 116 S.Ct. 1712 (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).[13]

## B. Mootness

■ Appellees also argue that the settlement of the underlying class action mooted these appeals because "the attorney's fees agreed upon in [the] settlement [agreements] . . . covered any monetary awards that might be (but never were) quantified and awarded pursuant to the Sanction Order and Opinion." Appellees' Br. at 37. Therefore, the settlements "and the yet to be quantified sanctions amounts formed a complete settlement of the case [and] . . . any issue currently before this Court involving that sanctions decision is moot." Appellees' Br. at 37 (emphasis omitted). Appellants respond that the settlements did not moot the appeals because the Appellants experienced (and continue to experience) reputational harm.

This court's precedent supports Appellants' position. In *In re Surrick*, 338 F.3d 224, 229–230 (3d Cir.2003), an attorney appealed a suspension order imposed on him during disciplinary proceedings.

However, the term of his suspension expired before he appealed, suggesting that the case might be moot. This court disagreed, holding that the Appellant's claim fit within the following exception to the mootness doctrine: a court will hear an otherwise moot appeal where "the trial court's order will have possible collateral consequences," *id.* at 230 (internal quotations omitted), and the relevant collateral consequence there was "the continuing stigma resulting from his suspension," *id.* Similarly, in *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 542–43 (3d Cir.2007), this court held that an attorney had standing to appeal a non-quantified sanction order because "a public reprimand carries with it the formal censure of the court and may, in many cases, have more of an adverse effect upon an attorney than a minimal monetary sanction." *Id.* at 543. Although *Bowers* was about standing, rather than mootness, it demonstrates that we have considered reputational harm to be a cognizable injury when determining whether the appeal of a sanctions order is justiciable.[14]

On a related issue, in *Perkins* the court rejected the argument that "since [the defendant] ha[d] agreed not to collect monetary sanctions, there is no longer an adversarial relationship and the sanction order is moot." 965 F.2d at 600. The court reasoned: "Appellants are entitled to bargain with adversaries to drop a motion for sanctions, but they cannot unilaterally bargain away the court's discretion in imposing sanctions and the public's interest in ensuring compliance with the rules of procedure." *Id.* We are aware of no binding precedent that contradicts these cases or otherwise requires a holding that this case is moot.

---

13. We are aware of no binding authority instructing that a final judgment of dismissal that results from a court-approved settlement should be treated any differently than any other final judgment for the purpose of rendering earlier, interlocutory orders final and appealable.

14. The court further noted that "[o]nly the Seventh Circuit has clearly held that a public reprimand not accompanied by a monetary sanction is non-appealable." *Bowers*, 475 F.3d at 543 (citing *Clark Equip. Co. v. Lift Parts Mfg. Co., Inc.*, 972 F.2d 817, 820 (7th Cir.1992)).

 Accordingly, we conclude that the doctrines of finality and mootness do not deprive this court of jurisdiction over this appeal.[15]

### III.

### Standard of Review

 "The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court," and "therefore [this court] review[s] a district court's decision to impose ... sanctions for abuse of discretion." *Bowers*, 475 F.3d at 538. "While this standard of review is deferential, a district court abuses its discretion in imposing sanctions when it 'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.' " *Id.* (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

### IV.

### Discussion

### A. The September 28, 2007 Sanctions Order

### 1. Factual Challenges

In Judge Gardner's opinion supporting his September 28, 2007 Sanctions Order, he concluded that the corporate Defendants and their counsel (i.e., all of the Appellants) "engaged in a course of conduct which makes it clear that they have not been forthcoming with the most important information in this case," App. at 91, by (1) "interpos[ing] ... legally deficient general objections for the improper purpose of delaying discovery in this case and to increase the costs to plaintiffs of bringing this case to trial," App. at 97, (2) failing to make a good faith effort to locate and produce documents requested by Plaintiffs, *see* App. at 100–02, (3) failing timely to produce and supplement discovery, *see* App. at 109–116, and (4) "act[ing] in bad faith in order to multiply these proceedings," App. at 125. Appellants challenge the factual bases of these conclusions as clearly erroneous.

### a. Factual Findings

Judge Gardner's lengthy and detailed set of factual findings served as the foundation for imposing sanctions. He found that "counsel for all defendants refused to withdraw the 'general objections'[16] con-

---

**15.** Appellees also argue that we lack jurisdiction because this court previously rejected Appellants' mandamus petitions with respect to the September 28, 2007 Sanctions Order. In denying Appellants' petitions, this court determined that the extraordinary remedy of mandamus was not appropriate; it did not determine whether the Court's Sanctions Order was an abuse of discretion or violated Appellants' due process rights—the issues now before this court concerning that order. *See, e.g.*, Capital/Keystone Reply Br. at 11. Moreover, in deciding the mandamus petitions, this court did not consider the other two orders now before us. *See, e.g.*, App. 14425 (Capital/Keystone Mandamus Petition).

**16.** None of the parties defines "general objections," but the Philadelphia Bar Association,

which filed an amicus brief in support of Appellants, provided the following explanation:

"General objections," as that term is commonly understood and used herein, refers to objections that a party responding to discovery asserts as applicable to multiple individual requests set forth in, for example, a given set of interrogatories or document production requests. "General objections" sometimes appear in response to equally "general" features of the discovery requests themselves, such as general or blanket instructions as to the time period applicable to all requests, the way in which terms are defined for purposes of all requests, etc. A party might make a "general objection," for example, to producing electronically stored information that is "not reasonably accessible because of undue

tained in all of their respective responses to plaintiffs' discovery requests." App. at 82. Later in the opinion, Judge Gardner also found that when claiming privilege as a general objection, "no defendant included a privilege log with their responses ... until directed to do so by the court." App. at 98. In addition, he found that all Defendants, through their counsel, denied the existence of documents that Plaintiffs had sought throughout discovery, but later announced that they had found many of those documents at, or soon after, the first meeting with Special Discovery Master Blume on October 20, 2005. Specifically, Judge Gardner found that: Girifalco, on behalf of Highmark, "announced that she had 'recently located' audit and other documents which counsel had repeatedly denied existed," App. at 83; Hangley, on behalf of Keystone, "also announced that Keystone had also 'recently located' 24 boxes of material responsive to plaintiffs' discovery requests," App. at 83; and Stevens & Lee, on behalf of Capital, "announced the 'discovery' of up to 60 boxes of recently located audit workpapers that counsel had previously denied existed, and which documents were represented to the [Special Discovery Master] one week earlier as having been destroyed," App. at 83.

Similarly, Judge Gardner found that Keystone—despite its persistent claims to the contrary—had the ability to obtain and/or generate claims data through its internal Comprehensive Analytical Health Reporting System ("CAHRS") "in the routine course of business," App. at 77, or to retrieve such data from Synertech through their Administrative Services Agreement ("ASA"), which entitled Keystone "to obtain routine and regular reports from Synertech created from the data that Synertech stored," App. at 76. Moreover, Judge Gardner pointed out that, in December 2005, "Keystone produced 50,937 documents including Synertech Systems Request Forms which had been previously withheld from plaintiffs ... [in] boxes of documents labeled 'Withheld Synertech Documents.'" App. at 84.

Judge Gardner also noted numerous instances of other last minute or late document production, including the following: (1) "[l]ate in the evening after normal business hours the night prior to [depositions related to claims data], counsel for Keystone forwarded hundreds of documents which previously had been requested by plaintiffs," App. at 84; (2) "[t]ens of thousands of documents were produced by defendants collectively ... the day before the end of class discovery," App. at 85; (3) on "the last day of class discovery, Capital produced [certain] documents after repeatedly denying that it had any such documents," App. at 85; and (4) after the deadline for class discovery production had passed, Highmark "produced 4,356 pages of documents," some of which had been "previously produced by Highmark to defendants' joint expert," and "included [certain documents], of which Highmark and its counsel previously had denied possession," App. at 85.

In addition, Judge Gardner found that Summers refused to produce underlying materials that supported his "Declarations which affirmatively represented to the court that [certain of] plaintiffs' allegations ... lacked any factual basis ... [and] were 'without merit,'" App. at 78, claiming that the documents were, alternately, "lay opinion," App. at 79, that they consisted of "expert disclosure," App. at 79, and later that they "were protected by the attorney-client privilege and work product doctrine," App. at 80, but nonetheless "refused to list the declarant materials on a privi-

burden or cost." *See* Fed.R.Civ.P. 26(b)(2)(A).

Amicus Br. at 4 n. 2.

lege log," App. at 82. Judge Gardner also concluded that Highmark and Girifalco falsely represented that Highmark had searched for (and not found) audit documents. Judge Gardner based this conclusion on the fact that Girifalco had certified in written discovery responses in 2004 that "a reasonable investigation was completed and that Highmark was not in possession of any audit documents," but in a November 2005 letter "stated that Highmark had not even looked for any documents which were subject to an objection." App. at 101.

■ Appellants challenge many of Judge Gardner's factual findings as clearly erroneous, contending that there was no factual basis in the record for the imposition of sanctions. *See, e.g.,* Tr. of Oral Argument at 6–7, *Grider v. Keystone Health Plan Cent., Inc.,* Nos. 08–3073, 08–3074, 08–3075, 08–3076, 08–3077, 2009 WL 2750450 (3d Cir. July 9, 2009) (counsel for Hangley, arguing on behalf of all Appellants, stated, "It is my position . . . that on this record there is not a basis for sanctions" and "there is not a foundation in the record for the judge's findings"). We disagree. Having examined the voluminous record in this case and compared it to the sanctions opinion, we conclude that Judge Gardner's factual findings have support in the record and are, therefore, not clearly erroneous. We will not disturb any of Judge Gardner's factual findings,[17] with one immaterial exception.[18]

### b. Credibility Determinations

■ Judge Gardner based the conclusions he drew from these factual findings, in part, on adverse credibility determinations. Having observed the parties and their attorneys in the course of proceedings for almost six years and having observed the attorneys as witnesses during the nine-day sanctions hearing, Judge Gardner stated at the beginning of his sanctions order: "Initially, I do not believe the testimony of Attorneys Summers, Girifalco, Huyett and Bukowski that they did nothing to frustrate discovery in this case. Rather, I conclude that there was a concerted effort to frustrate plaintiffs' attempts at obtaining relevant discovery." App. at 97. Elsewhere in the opinion, Judge Gardner added:

[R]egarding the credibility of Attorneys Girifalco and Summers, I found both to be evasive in their responses to many of the questions posed at the sanctions hearings by plaintiff's counsel. However, the demeanor and body language of both witnesses changed dramatically when questioned by their own counsel.

---

**17.** A number of the Appellants argue that these factual findings were not the product of Judge Gardner's independent judgment because his findings very closely resembled Plaintiffs' Proposed Findings of Fact and that, therefore, the District Court's reliance on Plaintiffs' version of events constituted a due process violation. *See, e.g.,* Hangley Br. at 41. We reject this argument because, as the Supreme Court has held, "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 572, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

**18.** We cannot sustain Judge Gardner's finding that the general objections were dismissed or stricken. In fact, although Magistrate Judge Rapoport dismissed the general objections, Judge Gardner vacated that decision. *See* App. at 1123 n. 1. The Special Discovery Master took the general objection "off the table" in order to focus on the specific objections, but as Anthony J. Bocchino, arguing on behalf of Appellees, conceded at oral argument: "the parties agreed to proceed as if they did not exist." Tr. of Oral Argument at 70. Nonetheless, we deem this erroneous finding to be immaterial because Judge Gardner's conclusion that Appellants misused general objections was not dependant on his finding that they had been dismissed.

Although, ... it is not unusual for a witnesses' [sic] demeanor to change when subject to adverse questioning, the degree to which these witnesses' demeanor changed was so striking that it left me with the feeling that they both were hiding significant information and were not completely candid about their activities in this matter.

App. at 92–93. In addition, Judge Gardner reiterated that counsel for·Highmark and Keystone "announced [at the first meeting with Special Discovery Master Blume] that they had just recently located responsive documents to long-sought-after discovery," App. at 97, and that later "Huyett announced that Capital had also just located up to 60 boxes of material," App. at 97.

With respect to all Appellants, Judge Gardner continued:

Defense counsel all testified that they attempted to work with plaintiffs. However, this assertion is belied by an apparent lack of discovery that was produced for the nearly one year that this case was in civil suspense from August 5, 2004 until the first meeting with Special Discovery Master Blume on October 20, 2005. (As noted above, the Order placing this case in civil suspense clearly directed the parties to continue discovery while the case was in suspense.)

App. at 97.

■■■ Nearly all Appellants challenge Judge Gardner's credibility determinations.[19] We review credibility determinations, like other factual findings, under a clearly erroneous standard. *See Cooter & Gell*, 496 U.S. at 400, 110 S.Ct. 2447 (" 'Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses' " (quoting Fed.R.Civ.P. 52(a) (1985))).[20] Appellants argue that Judge Gardner did not have a sufficient factual basis for finding that the attorneys lacked credibility. *See, e.g.,* Stevens & Lee Br. at 50.

We disagree. Judge Gardner invested the time and effort to hold a lengthy hearing and closely observe the witnesses. He was entitled to find that the attorneys' testimony was not credible, "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson,* 470 U.S. at 575, 105 S.Ct. 1504 (citation omitted). In addition, Judge Gardner was in the best position to determine whether the attorneys' testimony at the sanction's hearing was credible in light of their actions in the almost six years of proceedings before him. We conclude that Judge Gardner's credibility determinations were within his province as the finder of fact and were not clearly erroneous.

■■■ Appellants also challenge the weight that Judge Gardner gave these credibility determinations, arguing that credibility determinations supplanted affirmative evidence of wrongdoing. Appellants are correct that "discredited testimony is not considered a sufficient basis for drawing a contrary conclusion." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (citation omitted); *see also Eckenrode v. Pa. R.R. Co.,* 164 F.2d 996, 999 n. 8 (3d Cir.1947) ("[A] belief that testimony is false will not support an affirmative finding that the reverse

---

**19.** All Appellants except Keystone and Capital challenge Judge Gardner's credibility determinations.

**20.** *Cooter & Gell* cited with approval the Rule 52(a) standard of review for a district court's findings in a case involving Rule 11 sanctions, a context that is analogous to the instant case.

of that testimony is true."). Similarly, as Highmark observes, "a court may not 'insulate [its] findings from review by denominating them credibility determinations.' " Highmark Br. at 39 (alteration added) (quoting *Anderson*, 470 U.S. at 575, 105 S.Ct. 1504).

Highmark argues that the "district court's 'findings' violate these principles" because "[t]here is no direct evidence supporting ... a finding that Highmark 'hid' documents behind its general objections.... Similarly, the fact that Highmark produced documents after the SDM was appointed does not establish that Highmark had been 'hiding' documents before that time." Highmark Br. at 40. "Nothing about this sequence of events even suggests, much less establishes, that Highmark had been hiding behind its general objections...." Highmark Br. at 40–41 (citing App. at 692, 10403, 10404). Stradley, Stevens & Lee, and Hangley echo this same argument. *See* Stradley Br. at 44–47; Stevens & Lee Br. at 50; Hangley Br. at 46–48.

We reject Appellants' arguments that Judge Gardner used his adverse credibility determinations to compensate for an absence of affirmative evidence or to insulate his factual findings from review by this court. Judge Gardner's conclusion that the attorneys impeded discovery was not based solely on his determination that their testimony to the contrary was incredible. Instead, years of observing the conduct of the Defendants and their counsel supplied Judge Gardner with ample affirmative evidence from which he could infer that Appellants "engaged in a course of conduct which makes it clear that they have not been forthcoming with the most important information in this case." App. at 91. For instance, having compared the pace and volume of Defendants' production before and after the appointment of Special Discovery Master Blume, Judge Gard-

ner was entitled to draw the inference that the later rash of "discovery" of "recently-located" documents was not coincidence and that, instead, Appellants had been withholding documents behind their general objections. This was a permissible inference in light of the sequence of events. *See Anderson*, 470 U.S. at 574, 105 S.Ct. 1504 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Moreover, such a conclusion would be permissible even if Judge Gardner had not found incredible the attorneys' testimony that they did nothing to frustrate discovery. Judge Gardner was entitled to credit his own first-hand observations of the Appellants' conduct over the attorneys' self-serving testimony about this same conduct. Again, Judge Gardner's factual conclusions were within his province as the finder of fact and warrant our deference under the highly deferential standard of review. Given our scope of review, we cannot disturb the trial court's adverse credibility findings.

### 2. Legal Challenges

Although we do not disturb Judge Gardner's factual findings, we will vacate the September 28, 2007 Sanctions Order because there are several significant legal errors. *See Cooter & Gell*, 496 U.S. at 402, 110 S.Ct. 2447 (" 'If [the Court of Appeals] believed that the District Court's factual findings were unassailable, but that the proper rule of law was misapplied to those findings, it could have reversed the District Court's judgment.' " (alteration in original) (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986))).

#### a. Rule 26(g)

■ Judge Gardner sanctioned all Appellants under the following version of

Rule 26(g),[21] which provided, as relevant here:

> (2) Every ... objection made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name.... The signature of the attorney ... constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection is:
>
> > (A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
> >
> > (B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and
> >
> > . . .
>
> (3) *If without substantial justification a certification is made in violation of the rule,* the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the ... objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Fed.R.Civ.P. 26(g)(2)(3) (2000) (emphasis added). Judge Gardner held that all Appellants violated these rules by interposing general objections and by failing to make a good faith effort to locate certain documents. We are compelled to reverse the imposition of sanctions under Rule 26(g) because Judge Gardner failed to analyze the "substantial justification" standard expressly articulated in the Rule.

Rule 26(g) provides that an attorney will be sanctioned for noncompliance with that rule "[i]f without *substantial justification* a certification is made in violation of the rule." Fed.R.Civ.P. 26(g)(3) (emphasis added) (2000). There is nothing in Judge Gardner's opinion that discusses or expressly considers the contours of this standard or explains the ways in which Appellants' legal positions were not substantially justified. This standard is entirely absent in the opinion.

For instance, Judge Gardner found improper Keystone's general objection "to the production of a privilege log regarding documents prepared or created after [its] current counsel were retained." App. at 98. However, Judge Gardner never explained the legal basis for his conclusion that such an objection was improper.[22] Likewise, the opinion noted "[o]ther examples of improper general objections," citing discovery responses from all three corporate Defendants. The legitimacy of a general objection turns on the objection and its context. The Federal Rules do not prohibit general objections, but if the general objection is interposed in an attempt to insulate from discovery a large quantity of material that includes otherwise discoverable material when only some of the material may be protectible, the objection is inconsistent with the aim of discovery

---

**21.** Rule 26(g) was amended, without change to its substance, effective Dec. 1, 2007.

**22.** Although we agree with Amicus that a rule requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship, we do not read the District Court's opinion as stating such a rule. We underscore that a privilege log may not be required for communications with counsel that take place after the filing of a law suit. *See* James W. Quinn, Mindy J. Spector & John P. Mastando III, Responding to Document Requests, 2 Bus. & Com. Litig. Fed. Cts. § 21:41 (Robert L. Haig, ed., 2d ed. 2006) ("[I]n most litigations, counsel will agree to omit from the privilege log documents created by outside or in-house counsel after the litigation has commenced.")

and may well be the subject of sanction. *See generally* 7 James Wm. Moore *et al.,* Moore's Federal Practice § 33.171 (Matthew Bender 3d ed.). The opinion accompanying the September 28 Order did not explain why the general objections in this case were improper. Nor did the Court explain why these general objections were not "substantially justified," an explanation required by the language of the Rule.

We offer no opinion as to whether the "substantial justification" standard was met in this case.[23] It may be that if the Court had applied the "substantial justification" standard, it would still have concluded that sanctions were appropriate. However, on this record, it is also entirely possible that it could have found that some of Appellants' positions were indeed substantially justified.

For instance, Hangley argues that Keystone's position was substantially justified on the claims data issue because it "objected on the basis of 'possession custody or control' as to Synertech data." Hangley Br. at 58. It contends that, under its agreement with Synertech, Keystone had a right to the raw data held by Synertech, but not the data reports that Plaintiffs actually sought. Hangley Br. at 57–58. The language of the agreement could be read to support either position. Hangley notes that the agreement states that "all information generated under and/or contained in the [system] pertaining to Keystone Central shall also be and remain property of Keystone," App. at 9416, but the agreement also "confers [upon Keystone] no incidents of ownership, interest in title or any other proprietary interest whatsoever in the system or any parts thereof, *including, without limitation, any product, work product or otherwise* resulting from this Agreement," App. at 9416 (emphasis added). Keystone also might have been substantially justified in taking the position that, for the purposes of discovery, it did not have an obligation to generate data compilations that were not already in existence. We offer no opinion as to whether Hangley or Keystone would have prevailed with these arguments, but note them to underscore the significance of applying the "substantial justification" standard before imposing Rule 26(g) sanctions.

The failure to apply the applicable legal standard was reversible error and the sanctions under Rule 26(g) cannot be sustained.

### b. Rule 37(c)(1)

Judge Gardner also sanctioned all Appellants under Rule 37(c)(1), which provides:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not . . . permitted to use as evidence . . . any

---

**23.** This court has not addressed the "substantial justification" standard, but we note that in *Tolerico v. Home Depot,* Chief Judge Vanaskie, of the United States District Court for the Middle District of Pennsylvania, stated:

"Substantial justification" for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The test of substantial justification is

satisfied if there exists a genuine dispute concerning compliance. 205 F.R.D. 169, 175–76 (M.D.Pa.2002) (internal citation and quotations omitted); *see also* 6 Moore's Federal Practice, § 26.154[2][a] ("An objective standard is applied in determining whether sanctions are to be applied under Rule 26(g). . . . [T]he issue is whether the attorney or party who signed the certification conducted a reasonable inquiry into the facts supporting the disclosure or discovery document.").

witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions [such as] ... requiring payment of reasonable expenses, including attorney's fees.

Fed.R.Civ.P. 37(c)(1) (2000).

As a preliminary matter, it is unclear from the opinion whether the District Court intended to sanction both the parties and their counsel under Rule 37(c)(1). As noted, *supra* note 9, at one point in the opinion Judge Gardner listed only the Defendants as sanctioned under this rule, but elsewhere he also included their attorneys. To the extent that the Order sanctioned the attorneys and law firms under Rule 37(c)(1), it was legal error.

■■■ Although we have not before had occasion to address the applicable scope of Rule 37(e)(1) sanctions, the Second and Seventh Circuits have expressly declined to sanction attorneys under this rule. In *Apex Oil Co. v. Belcher Co. of N. Y., Inc.*, 855 F.2d 1009, 1014 (2d Cir.1988), the court stated that, "[b]y its express terms, Rule 37(c) applies only to a party." In addition, the *Apex* court continued, "we must infer from the other subsections of Rule 37 expressly providing for the imposition of sanctions against a party's attorney that the drafters intended to omit attorneys from the coverage of subsection (c)." *Id.* In reaching the same conclusion in *Maynard v. Nygren*, 332 F.3d 462 (7th Cir.2003), the Seventh Circuit noted that the "Fed.R.Civ.P. 37(c) advisory committee's note to the 1970 amendment [to Rule 37(c) ] requires 'that *the party* improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial.'" *Id.* at 470 (emphasis added). Moreover, the Wright & Miller treatise, citing *Apex*, also states that Rule 37 does not permit sanctions against the party's attorney and includes no authority to the contrary. 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2990. We find the reasoning of the Second and Seventh Circuits persuasive and hold that Rule 37(c)(1) does not permit sanctions against counsel. Accordingly, we will vacate all Rule 37(c)(1) sanctions against the Attorney Appellants.

■■■ As for the sanctions under 37(c)(1) imposed against the parties here, we conclude that the sanctions cannot stand for the same reasons that we discussed with respect to the sanctions under Rule 26(g). Rule 37(c)(1) is similar to Rule 26(g) in that it expressly includes the "substantial justification" standard; a district court may impose sanctions where "[a] party that without *substantial justification* fails to disclose information required by" certain enumerated subsections of Rule 26. Fed.R.Civ.P. 37(c)(1) (2000) (emphasis added). Because Judge Gardner did not discuss or analyze the "substantial justification" standard in imposing sanctions under Rule 37(c)(1), we will vacate all sanctions under this rule against the corporate Appellants.[24]

c. 28 U.S.C. § 1927 and Local Rule 83.6.1

■■■ The other basis for the September 28 Sanctions Order as to the attorney Appellants was that they violated 28 U.S.C. § 1927 and Rule 83.6.1. of the Local Rules of Civil Procedure of the United States

24. In addition, Judge Gardner erred as a matter of law insofar as he concluded that Capital was responsible for Keystone's production after Spring 2004 when it bought out Highmark. *See* App. at 116. We are aware of no authority for the proposition that a parent corporation, simply by virtue of ownership, may be held responsible for its subsidiary's alleged discovery violations.

District Court for the Eastern District of Pennsylvania. 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

We have held that "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *LaSalle Nat'l Bank v. First Connecticut Holding Group, L.L.C. XXIII*, 287 F.3d 279, 289 (3d Cir.2002) (citations omitted). As such, "under § 1927, an attorney's 'conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation.'" *Id.* (quoting *Baker Indus. Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 208 (3d Cir.1985)).

Local Rule 83.6.1, "Expedition of Court Business," provides, in relevant part:

(b) No attorney shall, without just cause, ... present to the court vexatious motions or vexatious opposition to motions or shall fail to prepare for presentation to the court, or shall otherwise so multiply the proceedings in a case as to increase unreasonably and vexatiously the costs thereof.

(c) Any attorney who fails to comply with ... (b) may be disciplined as the court shall deem just.

In imposing sanctions pursuant to 28 U.S.C. § 1927 and Local Rule 83.6.1, Judge Gardner incorporated certain of his factual findings. *See* App. at 123 ("I have extensively outlined [Summers'] conduct on this case above and incorporate it here."); *see also* App. at 125 ("I adopt all the findings and conclusions about [Girifal-

co's] specific conduct discussed above in this Opinion.") In addition, Judge Gardner made specific findings that each attorney acted in bad faith. He stated that Summers "engaged in a course of conduct which constituted bad faith in this matter," App. at 123, and Girifalco, "[w]hile her conduct was not as egregious as that of Attorney Summers, ... did her fair share of impeding discovery ... and acted in bad faith in order to multiply these proceedings." App. at 125. Although Judge Gardner noted that Huyett and Bukowsi were "the least culpable of the defense counsel in this case, they still helped to multiply these proceedings by their insistence on maintaining their general objections, their initial failure to provide privilege logs required by the Rules, and by delaying this case and not actively moving discovery along during the period of civil suspense." App. at 125.

Apparently with respect to all the attorneys (because no particular attorney was specified), Judge Gardner provided additional bases for his finding of bad faith. First, he noted that the "numerous motions filed in this matter [requesting reconsideration of Judge Rapoport's orders] and the conduct of counsel in their arguments to the court provide significant evidence of their bad faith." App. at 126. Second, he noted that "defendants have either appealed or disregarded almost every directive and recommendation issued by" the Special Discovery Master. App. at 126. Third, Judge Gardner stated that "[c]ounsel have all feigned misunderstanding of terms such as 'disengagement,' 'downcoding' and 'bundling.'" App. at 126. Fourth, Judge Gardner noted that "there are numerous instances ... where defendants, through their counsel, took inconsistent positions on matters in this litigation to suit their tactical purposes at the mo-

ment." App. at 126.[25]

Considering the opinion as a whole, there were sufficient findings of fact upon which Judge Gardner could have concluded that Summers, Girifalco, Huyett and Bukowski acted in bad faith in multiplying the proceedings in violation of 28 U.S.C. § 1927 and Local Rule 83.6.1. However, in the section of the opinion in which Judge Gardner actually discussed the imposition of sanctions on these grounds, he did so with such little specificity that we cannot affirm.

On the issue of the lack of specificity, Stradley argues that Judge Gardner "painted Defendants and their attorneys and law firms with a broad brush, indiscriminately lumping them together in a manner that rendered it impossible to determine who was responsible for what." Stradley Br. at 53. With respect to imposition of sanctions under 28 U.S.C. § 1927 and Local Rule 83.6.1 for multiplying the proceedings, Stradley accurately points out (1) that it appealed only two of Magistrate Rapoport's rulings; (2) that it only appealed five of the Special Discovery Master's rulings; and (3) that Judge Gardner provided no evidence that Stradley "feigned misunderstanding of any the terms such as 'disengagement,' 'downcoding' and 'bundling.'" App. at 126.

Similarly, Stevens & Lee denies engaging in "incessant motion practice," pointing out that it sought reconsideration of only two of Judge Rapoport's rulings (and noting that it prevailed on eleven of the fifteen discovery motions before the Magistrate Judge). Stevens & Lee notes that Judge Gardner "failed to identify *any* single motion or appeal filed by any defendant that did not comply with the rules, was filed in bad faith, or lacked merit." Stevens & Lee Br. at 26 (emphasis in original). Stevens & Lee argues that good faith filing of motions is not sanctionable and that, under 28 U.S.C. § 636(b)(1), it had the right to appeal Judge Rapoport's decisions to Judge Gardner.

Likewise, Highmark states: "One of the most troubling aspects of the court's opinion in support of the sanctions order is the degree and extent to which it paints with a broad brush, indiscriminately referring to 'defendants,' rather than to any specific defendant. The opinion groups the Defendants together, thereby obscuring who supposedly was responsible for what alleged misconduct." Highmark Br. at 30; *see also* Stradley Br. at 53 (listing findings from Judge Gardner's opinion that refers to "defendants" without specifying responsibility for individual conduct).

In *Martin v. Brown*, 63 F.3d 1252 (3d Cir.1995), we considered a sanction order that provided, "Penalties will now be imposed for the continued shenanigans of the parties and their counsel, who have been repeatedly warned that the court would take such action." *Id.* at 1264 n. 17. On appeal, we held that the breadth of the sanctions order violated due process: "This scatter-gun approach is unfair to Bender. It also makes our task of deciding whether the district court acted consistently with a sound exercise of discretion impossible on the record now before us." *Id.* at 1264. We stated that if the district court wished to pursue sanctions against Bender, "[i]t should relate each sanction to some aspect of Bender's conduct and explain how that conduct comes within the authority it relies on to impose it. Any sanctions imposed against Bender should also be imposed solely because of her own improper conduct without considering the

---

**25.** As an example, Judge Gardner explained that the Defendants altered their arguments with respect to whether the Florida MDL proceeding was relevant to their case depending on their needs at various points in the litigation.

conduct of the parties or any other attorney." *Id.* at 1265.

The sanctions here were imposed with greater specificity than those before us in *Martin* and we do not find a due process violation here as we did there. Nonetheless, we cannot affirm the order because of the vague use of the terms "defendants" without describing individual sanctionable conduct and the general lack of factual specificity that marks the section of the opinion discussing sanctions under 28 U.S.C. § 1927 and Local Rule 83.6.1.

Unfortunately, this lack of specificity is a pervasive characteristic of Judge Gardner's opinion. For example, in allocating the percentage of responsibility of each Appellant, Judge Gardner held Stevens & Lee responsible for paying 5% of Plaintiffs' costs incurred in filing the sanctions motion and participating in proceedings before Special Discovery Master Blume, as well as *all* fees Plaintiffs paid to Blume. However, Stevens & Lee ceased representing Capital in October 2006, well before many of those costs and fees were incurred. Because the monetary aspect of the sanctions is not an issue before us, we need not determine whether that percentage was reasonable. However, we note that the sanctions for Stevens & Lee should have been cabined to the timeframe in which it represented Capital.

The mere fact that Defendants had entered into a joint-defense agreement did not support imputation of the actions of one party's attorney to another party or its attorney. Although the court may have permissibly concluded that the Defendants engaged in a concerted effort to impede discovery, in specifically outlining the bases for each legal ground for sanctions the Court was required to describe the sanctionable conduct of each with such specificity as to ensure that one Defendant was not sanctioned for the acts of another. On occasion, the Court delineated sanctionable

behavior with appropriate specificity and individualization. For example, in the findings of fact section of the opinion, Judge Gardner found that, under the ASA, Keystone could obtain claims data from Synertech in the regular course of business, but that Keystone "routinely denied not only the existence of the Synertech data, but also their ability to comply with plaintiffs' discovery requests." App. at 76. In addition, Judge Gardner found that claims data was "available to Keystone and in its possession and control" as early as fall 2003 and that Keystone also had the ability to generate claims data through its internal CAHRS system. App. at 77. Later, in the discussion section, Judge Gardner imposed sanctions under 26(g) for this conduct, describing it again with specificity. Nevertheless, as noted above, sanctions on this ground must still be vacated because Judge Gardner failed to consider whether Keystone was substantially justified in taking the positions that it did.

As stated above, the imposition of sanctions requires an individualized analysis that was not consistently employed here— and certainly was not employed with respect to sanctions under 28 U.S.C. § 1927 and Local Rule 83.6.1. It is evident from the record that Judge Gardner was frustrated with Appellants' conduct and, having reviewed the record, we believe that this frustration was warranted. We also acknowledge that this was a situation in which it was sometimes difficult to pinpoint individual instances of sanctionable behavior (though we recognize that this was partly because the Judge viewed the Defendants' overall course of conduct). Although Judge Gardner did not abuse his discretion in determining that sanctions were warranted against all counsel under 28 U.S.C.1927 and Local Rule 83.6.1, it was an abuse of discretion to impose sanctions pursuant to those rules without undertaking an individualized analysis. Where at-

torneys' reputations (and, therefore, their livelihood and ability to practice their chosen profession) are at stake, we require a judge to analyze the sanctionable conduct with greater specificity than Judge Gardner did in this case in imposing sanctions under 28 U.S.C. § 1927 and Local Rule 83.6.1.

In sum, although we do not displace Judge Gardner's findings of fact, we will vacate all sanctions against all Appellants.[26] Ordinarily, we would remand the case to the District Court to allow it to apply the "substantial justification" standard to sanctions under Rules 26(g) and 37(c)(1) and to undertake a more specific and individualized analysis under 28 U.S.C. § 1927 and Local Rule 83.6.1. However, in this situation, where the parties have settled the matter of the attorneys' fees, there is no reason to remand. It is time the tumult in the legal community caused by this case came to an end.

## B. The March 30, 2006 Order on Judge Rapoport's Admonishment

■ The other sanctions order that generated substantial concern is Judge Gardner's March 30, 2006 order which is challenged by Hangley, Stradley, and Stevens & Lee. In that order, Judge Gardner affirmed the order of Magistrate Judge Rapoport dated July 20, 2005, holding that Judge Rapoport's "admonishment" of counsel was "neither clearly erroneous nor contrary to law." App. at 41. Notwithstanding that Magistrate Judge Rapoport expressly stated that he "did not consider the admonition to be a sanction," App. at 1939, Judge Gardner "conclude[d] that [the admonishment] was a sanction." App. at 41.[27]

It is unusual, if not inappropriate as we note hereafter, for one judge to recharacterize the action of another judge. Judge Gardner's conclusion was based primarily on *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 811 (3d Cir.1992). In *Langer,* defendant Presbyterian Medical Center had filed procedurally improper crossclaims, failed to withdraw them and caused default judgment to be entered without notice to opposing counsel. *Id.* at 810. The district court determined that this "conduct 'prima facie' called for Rule 11 sanctions," and criticized that party for " 'questionable' conduct[, but] . . . declined to order sanctions." *Id.* at 793. The opposing party had requested sanctions in the form of attorneys' fees, but the district court concluded that "[b]ecause [the opposing party's] expenses were not 'reasonable expenses incurred because of the filing,' it is not entitled to attorney fees under Rule 11." *Id.* at 809.

On appeal from the district court's failure to impose a sanction, this court held that the "district court found a Rule 11 violation, but thought that the sanction that [the opposing party] requested was inappropriate, and satisfied itself with a reprimand." *Id.* We noted, "While the record is not entirely clear on this point, we believe that the district court did sanction Presbyterian's counsel with a reprimand for its unprofessional conduct. Reprimands are an appropriate sanction in some cases." *Id.* at 811. We discussed the types of sanctions that might be appropriate for a Rule 11 violation, stating that " '[w]hat is "appropriate" may be a warm friendly discussion on the record, a hardnosed reprimand in open court, compulsory legal education, monetary sanctions, or

---

26. Because we have concluded that all sanctions will be vacated, we need not reach Appellants' due process arguments.

27. A district court may modify or set aside a magistrate judge's pretrial order if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed.R.Civ.P. 72(a).

other measures appropriate to the circumstances.' " *Id.*(quoting *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 878 (5th Cir.1988) (en banc)). Based on this language, Judge Gardner concluded, "[i]f a 'warm friendly discussion on the record' could constitute a possible sanction, then an admonishment ... would certainly constitute a sanction." App. at 40.

Stradley argues persuasively that Judge Gardner's determination was based on a misreading of *Langer.* Its brief states, "*Langer* holds that, *if* sanctions are warranted, *then* a reprimand can constitute such a sanction. *Langer* does not hold, however, that the converse is also true— namely, that if a party is reprimanded, then that party *has been sanctioned.*" Stradley Br. at 60 (emphasis in original). We agree.

The situation in *Langer* differed significantly from that before us. At the time of that case, the imposition of sanctions was mandatory once the judge determined that a Rule 11 violation had occurred. *Id.* at 810.[28] This court stated (possibly because a sanction for violation of Rule 11 was mandatory) that "[a]lthough the district court's opinion nominally 'decline[d] to order sanctions in this case,' ... the district court's opinion merely denied Monarch's request for a particular type of sanction." *Id.* at 811 n. 29 (alterations added).

On this basis, we agree with Stradley that *Langer* does not hold that an admonishment is always a sanction and, therefore, Judge Rapoport did not err in stating that his admonishment was not a sanction. We believe it was inconsistent for Judge Gardner to have stated, on the one hand, that Magistrate Judge Rapoport's decision was neither erroneous nor contrary to law and, on the other hand, to have overturned one of Judge Rapoport's legal conclusions.

Moreover, as we held in *Snow Machines, Inc. v. Hedco, Inc.,* "it is simply improper for one judge to ... conclude that another judge did not intend to order what [ ]he in fact ordered." 838 F.2d 718, 727 (3d Cir.1988). In *Snow Machines,* the district court sanctioned a party for submitting to it an order signed by a magistrate judge, determining that the magistrate's signature of the order was "an unintentional error." *Id.* at 727. In reversing, we observed:

> Recognizing a power in one judge to conclude that another judge did not intend to do what she in fact did is fraught with danger. It opens a gaping hole in the carefully constructed legal principles governing standards of appellate review. A district judge may only set aside an order of a magistrate concerning a nondispositive matter where the order has been shown to be clearly erroneous or contrary to law. If the district court may simply conclude that the magistrate did not really intend to enter the order which she did, this limitation on the reviewing power is illusory.

*Id.* 727–28 (citations omitted).

For these reasons, we conclude that Judge Gardner's ruling that Judge Rapoport's admonishment was a sanction was not a sound exercise of his discretion. We will accordingly vacate the March 30, 2006 Order.

## V.

### Conclusion

This case does not show the judicial system at its best, and all members of this panel have been judges long enough to know that it is not representative of the usual level of litigation in the federal

---

**28.** Effective December 1, 1993, after we decided *Langer,* Rule 11 was amended such that "the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory." *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994).

courts. As we noted above, in light of the settlement we see no basis to remand. If there were a need to remand, we would not hesitate to send this case back to Judge Gardner, as we are satisfied that he would certainly be able to preside impartially and decide the issues we have identified as requiring further analysis and decision. We deem Appellants' suggestions to the contrary to be unfounded and wholly inappropriate.

Because we have not delved into the merits of the dispute, we are unaware of the reasons why tensions ran higher than usual in this case. We recognize that all counsel were devoted to their clients' interests but devotion does not require stridency, and we anticipate no repetition from the counsel involved.

For the reasons set forth, we will leave intact Judge Gardner's factual findings and credibility determinations, but we will vacate both the March 30, 2006 and September 28, 2007 Sanctions Orders.[29]

**29.** Because we will vacate the September 28, 2007 Sanctions Order in its entirety, we will dismiss as moot Appellants' appeal of Judge Gardner's June 25, 2008 Order denying their motions to vacate that order.